[Cite as *Cooper v. BASF, Inc.*, 2013-Ohio-2790.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LARRY COOPER, et al.

    Appellants

    v.

BASF, INC., et al.

    Appellees

C.A. No.    26324

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2010-06-4340

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

MOORE, Presiding Judge.

{¶1} Plaintiffs-Appellants, Larry and Margaret Cooper ("the Coopers"), appeal from the February 3, 2012 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} This matter stems from an alleged misapplication of Termidor SC, a product manufactured by Defendant-Appellee, BASF, Inc., and applied by Defendant-Appellee, Akron Pest Control Company. The record indicates that the Coopers contacted Akron Pest Control Company due to a termite infestation in various parts of their Flanders Avenue home. In April of 2008, Akron Pest Control Company applied Termidor SC, which contains the chemical fipronil, inside an open wall in the Coopers' bedroom, underneath a bathroom drain which is accessed through an opening under a sink cabinet, and around the perimeter of the house.

{¶3} On July 11, 2008, Mrs. Cooper was hospitalized due to weakness, memory loss, cognitive issues, tremors, and psychological/personality changes. She was diagnosed with

hypothyroidism and encephalopathy of unknown etiology, possible pesticide exposure. On July 16, 2008, Mrs. Cooper was hospitalized again due to convulsions and diagnosed with acute psychotic reaction, hypothyroidism, possible exposure to pesticides of unknown significance, and metabolic encephalopathy. Approximately one year later, Mrs. Cooper was diagnosed with hypothyroidism caused by Hashimoto's thyroiditis.

{¶4} The Coopers filed a complaint alleging: (1) negligence against BASF, Inc., and Akron Pest Control Company, (2) products liability claims against BASF, Inc. and Akron Pest Control Company, and (3) fraud against Akron Pest Control Company.

{¶5} In November of 2010, the trial court ordered the Coopers to identify one or more expert witnesses who would support their theory of general and specific causation in this matter. Further, the trial court required the Coopers to "submit either a letter or an affidavit of the expert(s) indicating that he/she/they are prepared to testify that [Termidor SC] generally is capable of causing the medical conditions about which [Mrs.] Cooper complains and that in this specific instance there is a good faith basis for believing that her conditions were caused by her exposure to [Termidor SC]."

{¶6} The Coopers identified Richard L. Lipsey, Ph.D., as their general causation expert, and Lawrence J. Guzzardi, M.D., as their specific causation expert. Additionally, the Coopers submitted Dr. Lipsey's affidavit on general causation, which was relied upon by Dr. Guzzardi in forming his opinion on specific causation.

{¶7} BASF, Inc. and Akron Pest Control Company filed several motions, including: individual motions for summary judgment, a joint motion for summary judgment on the issue of medical causation, a joint motion to exclude the opinions and testimony of Dr. Lipsey, and a joint motion to exclude the opinions and testimony of Dr. Guzzardi.

**{¶8}** In granting BASF, Inc. and Akron Pest Control Company's motions for summary judgment on all claims, the trial court stated:

* * *

After carefully reviewing Dr. Lipsey's deposition, the Court finds that he has not based his opinion regarding general medical causation on reliable scientific, technical, or other specialized information. None of the articles or studies he reviewed show a causal connection between Fipronil exposure and hypothyroidism or Hashimoto's thyroiditis. The fact that Mrs. Cooper was allegedly exposed to Fipronil does not, in and of itself, establish that Fipronil is capable of causing hypothyroidism or Hashimoto's thyroiditis, her diagnosed condition.

Dr. Lipsey cannot reference any studies involving humans, other than one study of 103 workers exposed to Fipronil in the factory manufacturing flea collars. In that study, symptoms brought on by Fipronil exposure were temporary, and workers' conditions improved when no longer exposed. In contrast, Mrs. Cooper's condition worsened weeks and months after her alleged exposure. Thus, the only human study involving Fipronil does not support Dr. Lipsey's medical causation opinion.

The animal studies cited by Dr. Lipsey fail to establish any correlation across species. Dr. Lipsey admitted that rat studies on Fipronil exposure are not appropriate models for humans. Like the experts in the *Valentine* case, Dr. Lipsey would be required to extrapolate from the conclusions of the underlying materials to reach an opinion regarding general medical causation as to Mrs. Cooper. In summary, Dr. Lipsey has no reliable scientific bases upon which to base his expressed opinion. For this reason, the Court cannot consider Dr. Lipsey's opinion as to general medical causation.

Without general causation having been established, the court need not examine specific causation testimony as it is unwarranted.

* * *

**{¶9}** The Coopers appealed, raising two assignments of error for our consideration. In their cross-appeals, BASF, Inc. and Akron Pest Control Company also each raised three assignments of error.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED, BOTH AS A MATTER OF LAW AND AS A MATTER OF DISCRETION, BY GRANTING SUMMARY JUDGMENT TO [BASF, INC. AND AKRON PEST CONTROL COMPANY] ON ALL OF [THE COOPERS'] CLAIMS.

**{¶10}** In their first assignment of error, the Coopers argue that the trial court abused its discretion in excluding the opinion and testimony of Dr. Lipsey and granting summary judgment, on all claims, in favor of BASF, Inc. and Akron Pest Control Company. We disagree.

**{¶11}** Evid.R. 702 governs the admissibility of expert testimony. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 610 (1998). The rule provides that:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>
> (2) The design of the procedure, test, or experiment reliably implements the theory;
>
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702. "The qualification and reliability requirements of Evid.R. 702 are distinct. Because even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that

underlie an expert's opinion." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 17. "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." *Miller* at 611, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594 (1993). The focus must be on whether the expert's opinion is based "upon scientifically valid principles[.]" *Miller* at paragraph one of the syllabus.

{¶12} Further, "'[t]he determination of the admissibility of expert testimony is within the discretion of the trial court * * * [and] will not be disturbed absent [an] abuse of discretion.'" *Finley v. First Realty Property Mgt., Ltd.*, 185 Ohio App.3d 366, 2009-Ohio-6797, ¶ 9 (9th Dist.), quoting *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 9. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse-of-discretion standard, this Court may not substitute its judgment for that of the trial court. *See Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶13} Here, the Coopers sought to have Dr. Lipsey testify as their general causation expert. If the trial court had permitted Dr. Lipsey's testimony, he would have opined that fipronil is capable of causing hypothyroidism in humans. However, Dr. Lipsey reached this conclusion without any scientific proof of a causal link between fipronil and hypothyroidism in humans. The record contains no evidence of any generally accepted methodology that has been adopted by the scientific community to establish a causal link between fipronil and hypothyroidism in humans. Further, our review of Dr. Lipsey's deposition transcript reveals that

he failed to identify the generally accepted methodology upon which he relied in determining that fipronil is capable of causing hypothyroidism in humans.

{¶14} In his deposition, Dr. Lipsey testified that: (1) he has never written any peer-reviewed articles concerning the effects of fipronil or any other pesticide on the human thyroid, (2) he did not do a differential diagnosis to rule out hypothyroidism or Hashimoto's thyroiditis as the cause of Mrs. Cooper's symptoms, (3) he did not do a dose reconstruction as to the amount of fipronil Mrs. Cooper was exposed to, (4) he did not find *any* epidemiology studies in his literature search relating to fipronil exposure and its effect on the human thyroid, (5) there was no biological sampling done on Mrs. Cooper's blood or fatty tissue to prove that she had been exposed to fipronil, (6) the rat model is not ideal for cross-species comparisons because rats are more sensitive to thyroid disrupters than humans, (7) in a study of 103 humans exposed to fipronil, none had any condition relating to their thyroid, and (8) nothing in his PubMed literature search reflected that fipronil exposure caused hypothyroidism or Hashimoto's thyroiditis in humans.

{¶15} After careful review of Dr. Lipsey's deposition and the record, we conclude that the trial court's decision to exclude Dr. Lipsey's opinion and testimony was not unreasonable, arbitrary, or unconscionable because his theory that exposure to fipronil causes hypothyroidism in humans is not based "upon scientifically valid principles[.]" *See Miller*, 80 Ohio St.3d 607, at paragraph one of the syllabus. Thus, the trial court did not abuse its discretion.

{¶16} Further, the Coopers have argued that the trial court erred in granting summary judgment, on all claims, in favor of BASF, Inc. and Akron Pest Control Company.

{¶17} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). It applies the same standard as the trial court,

viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Specifically, the moving party must support its motion by pointing to some evidence in the record indicated in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293; Civ.R. 56(E).

{¶18} In *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, at syllabus, the Supreme Court of Ohio held:

> 1. To present a prima facie case involving an injury caused by exposure to mold or other toxic substance, a claimant must establish (1) that the toxin is capable of causing the medical condition or ailment (general causation) and (2) that the toxic substance in fact caused the claimant's medical condition (specific causation).
>
> 2. Establishing general causation and specific causation in cases involving exposure to mold or other toxic substances involves a scientific inquiry, and thus causation must be established by the testimony of a medical expert.
>
> 3. Without expert testimony to establish both general causation and specific causation, a claimant cannot establish a prima facie case of exposure to mold or other toxic substance.

{¶19} The record indicates that the Coopers have exclusively relied upon the opinion and testimony of Dr. Lipsey to prove general causation in this case. Having previously concluded

that the trial court did not abuse its discretion in excluding Dr. Lipsey's opinion and testimony, the Coopers have no evidence of causation to support their claims that Mrs. Cooper's exposure to fipronil, a chemical component of Termidor SC, caused her medical conditions of hypothyroidism and Hashimoto's thyroiditis. As such, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Dresher,* 75 Ohio St.3d at 288, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). *See also Finley*, 2009-Ohio-6797, ¶ 30. Therefore, as a matter of law, the Coopers are unable to meet their prima facie burden of proving general causation. Accordingly, BASF, Inc. and Akron Pest Control are entitled to summary judgment on all claims.

{¶20} The Coopers' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, BY DENYING [THE COOPERS'] MOTION TO STRIKE THE REPLY BRIEFS FILED BY [BASF, INC. AND AKRON PEST CONTROL COMPANY].

{¶21} In their second assignment of error, the Coopers argue that the trial court erred in denying their motion to strike BASF, Inc.'s and Akron Pest Control Company's reply briefs. Specifically, the Coopers argue that BASF, Inc. and Akron Pest Control Company made new arguments and submitted additional evidentiary materials in their reply briefs, to which the Coopers were unable to respond.

{¶22} "A trial court's decision to grant a motion to strike will not be overturned on appeal absent an abuse of discretion." *Nationwide Life Ins. Co. v. Kallberg,* 9th Dist. No. 06CA008968, 2007-Ohio-2041, ¶ 20, quoting *Matthews v. D'Amore,* 10th Dist. No. 05AP-1318, 2006-Ohio-5745, ¶ 25. "Moreover, because the trial court retains broad discretion in the

admission or exclusion of evidence, an appellate court will not overturn the trial court's ruling on a motion to strike in the absence of material prejudice to the appellant." *Wallner v. Thorne*, 189 Ohio App.3d 161, 2010-Ohio-2146, ¶ 17 (9th Dist.), citing *Nationwide Life Ins. Co. v. Kallberg,* 9th Dist. No. 06CA008968, 2007-Ohio-2041, ¶ 20.  As stated above, an abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.  *See Blakemore*, 5 Ohio St.3d at 219.

{¶23}  Here, BASF, Inc. and Akron Pest Control Company asked the trial court for leave to file an additional affidavit to correct an error in BASF, Inc.'s and Akron Pest Control Company's joint motions for summary judgment on the issue of medical causation and to exclude the opinion and testimony of Richard L. Lipsey, and in BASF, Inc.'s motion for summary judgment.  During the course of discovery, the Coopers had been propounded with requests for admissions, including that Dr. Lipsey had a general causation opinion as to Hashimoto's thyroiditis (Request Number 14), and that Dr. Lipsey had a general causation opinion as to hypothyroidism (Request Number 15). In the affidavit attached to their reply brief, an attorney for BASF, Inc. attested that in preparing the motions, he inadvertently switched the Coopers' response to Request for Admission No. 15 with Request for Admission No. 14.  Also, in order to evidence an alleged misrepresentation by the Coopers' attorney, BASF, Inc. and Akron Pest Control Company asked for leave to attach a copy of a "Fipronil Fact Sheet." Finally, BASF, Inc. asked for leave to file an additional affidavit refuting one of the Coopers' arguments asserted in their memoranda in opposition to the motions for summary judgment and motions to exclude Drs. Lipsey's and Guzzardi's opinions and testimony.

{¶24}  The Coopers moved to strike the reply briefs and for the court to disallow any additional evidence.  The trial court granted BASF, Inc. and Akron Pest Control Company leave

to file the additional evidence and denied the Coopers' motion to strike stating: "[c]ontrary to the [Coopers'] contention, the addition of such Rule 56 evidence will not result in 'summary judgment by ambush.' Rather, these items correct scrivener errors and address specific allegations raised by the [Coopers] in their global response to the motions."

{¶25} Upon review of the record, we conclude that the trial court did not abuse its discretion in allowing the additional evidence and denying the Coopers' motion to strike. However, even assuming that the trial court erred, we conclude the error is harmless. In the first assignment of error, we stated that summary judgment was appropriate because the Coopers are unable to meet their prima facie burden of proving general causation: that fipronil causes hypothyroidism/Hashimoto's thyroiditis in humans. As such, the trial court's denial of the motion to strike did not materially prejudice the Coopers in this matter.

{¶26} The Coopers' second assignment of error is overruled.

**BASF, INC.**

### CROSS-ASSIGNMENT OF ERROR I

[BASF, INC.] IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE [THE COOPERS] LACKED ANY ADMISSIBLE EXPERT OPINION EVIDENCE AS REQUIRED TO ESTABLISH SPECIFIC MEDICAL CAUSATION.

### CROSS-ASSIGNMENT OF ERROR II

[BASF, INC.] IS ENTITLED TO JUDGMENT AS A AMATTER OF LAW BECAUSE [THE COOPERS'] CLAIMS ARE PREEMPTED BY THE FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT.

### CROSS-ASSIGNMENT OF ERROR III

[BASF, INC.] IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE IT DISCHARGED ANY DUTY TO WARN BY ITS REASONABLE RELIANCE ON A SOPHISTICATED PURCHASER, [] AKRON PEST CONTROL [COMPANY][.]

**AKRON PEST CONTROL COMPANY**

## CROSS-ASSIGNMENT OF ERROR I

A SPECIFIC CAUSATION EXPERT FAILS TO PROVIDE ADMISSIBLE OPINIONS WHEN THE EXPERT CAN CITE TO NO MEDICAL LITERATURE SUPPORTING THE OPINIONS AND HAS OPPOSING OPINIONS TO THE GENERAL CAUSATION EXPERT. DR. GUZZARDI TESTIFIED THAT NO MEDICAL LITERATURE LINKS FIPRONIL TO HUMAN THYROID CONDITIONS. HE DISAGREES WITH THE DIAGNOSIS OF HASHIMOTO'S THYROIDITIS, IN CONFLICT WITH THE GENERAL CAUSATION EXPERT. WAS SUMMARY JUDGMENT APPROPRIATE WHEN THE OPINION OFFERED BY THE SPECIFIC CAUSATION EXPERT LACKS SCIENTIFIC FOUNDATION?

## CROSS-ASSIGNMENT OF ERROR II

IN A TOXIC EXPOSURE CASE, [THE COOPERS] MUST SHOW ACTUAL EXPOSURE AND AN ADVERSE REACTION TO ESTABLISH PROXIMATE CAUSE. [THE COOPERS] DID NOT COME INTO DIRECT CONTACT INTERIORLY OR EXTERIORLY AND DID NOT INHALE THE SUBSTANCE THAT IS NEITHER GAS NOR VAPOR AT ROOM TEMPERATURE. WAS SUMMARY JUDGMENT APPROPRIATE WHEN THERE IS NO EVIDENCE TO ESTABLISH THAT [THE COOPERS] CAME IN CONTACT WITH A PESTICIDE IN SUCH A MANNER AS WOULD LEAD TO AN ADVERSE REACTION?

## CROSS-ASSIGNMENT OF ERROR III

FRAUD REQUIRES A KNOWINGLY FALSE STATEMENT MADE BY A PARTY WITH THE INTENT TO HAVE OTHERS RELY UPON THE STATEMENTS. TOM WHITTIS BELIEVED THAT NO ADVERSE EFFECT WOULD OCCUR TO HUMANS FROM EXPOSURE TO FIPRONIL. WAS SUMMARY JUDGMENT APPROPRIATE WHEN THE SEMINAL ELEMENTS OF FRAUD CANNOT BE ESTABLISHED?

{¶27} As to BASF, Inc.'s and Akron Pest Control Company's cross-assignments of error, based upon our resolution of the Coopers' first assignment of error, we conclude that they are moot. *See* App.R. 12(A)(1)(c).

III.

{¶28} In overruling both of the Coopers' assignments of error, and rendering BASF, Inc.'s and Akron Pest Control Company's cross-assignments of error moot, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

MICHAEL A. PARTLOW, Attorney at Law, for Appellants.

THOMAS R. WOLF, Attorney at Law for Appellee.

TIMOTHY J. COUGHLIN, JOHN R. MITCHELL, and CHRISTOPHER J. KLASA, Attorneys at Law, for Appellee.