[Cite as *Sliwinski v. St. Edwards*, 2014-Ohio-4655.]

STATE OF OHIO      )         IN THE COURT OF APPEALS
                       )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT      )

MARY SLIWINSKI                   C.A. No.       27247

     Appellant

     v.                                APPEAL FROM JUDGMENT
                                          ENTERED IN THE
THE VILLAGE OF ST. EDWARDS, et al.      COURT OF COMMON PLEAS
                                          COUNTY OF SUMMIT, OHIO
     Appellees                         CASE No.     CV 2009 05 4106

DECISION AND JOURNAL ENTRY

Dated: October 22, 2014

WHITMORE, Judge.

{¶1} Plaintiff-Appellant, Mary Sliwinski, executrix of the estate of Alice Sekerak, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In December 2005, Alice Sekerak suffered a stroke and was admitted to the Village at St. Edwards ("the Village") for rehabilitation. Sekerak was 86 years old and had a history of various health problems, but was expecting to return home after rehabilitation at the Village. Dr. Robert Norman was selected to be Sekerak's attending physician while she remained a resident.

{¶3} At some point during Sekerak's stay, Mary Sliwinski, Sekerak's daughter and executrix of her estate, contacted the Ohio Department of Health ("ODH") to report her concerns about the care being provided to Sekerak. On March 9, 2006, ODH investigated and produced a written report. Sekerak, still a resident at the Village, passed away on March 10, 2006.

**{¶4}** Sliwinski filed a civil action against the Village and Dr. Norman alleging medical malpractice, wrongful death, common law negligence, and violations of the Nursing Home Patients' Bill of Rights. After extensive discovery, the case was voluntarily dismissed. It was refiled in 2009. After additional motion practice, it proceeded to jury trial in January 2014. On January 15th, the jury returned verdicts in favor of the Village and Dr. Norman (collectively, "the Appellees"). Sliwinski now appeals and raises one assignment of error for our review.

II

Assignment of Error

THE JURY VERDICT FOR THE DEFENDANTS WAS PROCURED BY JUDICIAL ERRORS AND EVIDENTIARY FAILURES[.]

**{¶5}** In her sole assignment of error, Sliwinski argues that the court erred by: (1) failing to conduct a *Daubert* hearing, (2) refusing to take judicial notice of Ohio Administrative Code ("OAC") regulations, and (3) excluding ODH's survey results from discovery depositions and trial.

### *Daubert*

**{¶6}** Sliwinski first argues that the court erred by failing to conduct a separate *Daubert* hearing before allowing the Appellees' experts to testify at trial. We disagree.

**{¶7}** As a preliminary matter, Evid.R. 601(D) details who is competent to testify as an expert in a civil case against a physician or hospital. The rule, in relevant part, provides that a person is not competent to give "expert testimony on the issue of liability in any claim asserted in any civil action against a physician * * * or hospital arising out of the diagnosis, care, or treatment of any person by a physician, * * * unless the person testifying is licensed to practice medicine * * * by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice

in his or her field of licensure, or to its instruction in an accredited school." Other medical professionals are competent to give expert testimony on the appropriate standard of care in their own profession in any civil action against a physician, medical professional, or hospital arising out of the diagnosis, care, or treatment of any person. Evid.R. 601(D)

{¶8} Sliwinski does not appear to argue that the Appellees' experts were not competent to testify. Instead, she argues that the court was required to hold a hearing to determine whether their testimony was admissible under Evid.R. 702 prior to their testimony.

{¶9} Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶10} "The qualification and reliability requirements of Evid.R. 702 are distinct. Because even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that underlie an expert's opinion." *Cooper v. BASF, Inc.*, 9th Dist. Summit No. 26324, 2013-Ohio-

2790, ¶ 11, quoting *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 17. The inquiry focuses on whether the principles and methods employed by the expert are reliable, not whether the expert's conclusions are correct. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611 (1998). Factors to consider when determining reliability of scientific evidence are: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." *Id.*, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594 (1993).

{¶11} The determination as to the admissibility of expert testimony is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Miller* at 616. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} The Appellees presented three expert witnesses, Nurse Denise Winzler, Dr. Timothy Fetterman, and Dr. Mark Evans. Nurse Winzler is a registered nurse and a licensed nursing home administrator. She is currently employed with HCR Manorcare overseeing four long-term care facilities to ensure quality of patient care. In her duties, Nurse Winzler reviews patients' charts to determine if the nursing staff is following HCR's policies and procedures and maintaining the appropriate standard of care. Nurse Winzler has also worked as a Director of Nursing in a long-term care facility. Nurse Winzler is qualified by her specialized knowledge, skill, experience, and education to testify about the standard of care for nursing staff in a long-term care facility. Further, her testimony of that standard of care is beyond the knowledge possessed by a lay person. Therefore, Evid.R. 702(A) and (B) are met.

{¶13} Dr. Fetterman is a licensed physician in the State of Ohio and is board certified in family practice. He has been board certified since 1998. Dr. Fetterman "see[s] pediatric patients all the way through geriatrics." Dr. Evans is a licensed physician in the State of Ohio and is board certified in family practice. Dr. Evans has experience working with geriatric patients and is serving as a Medical Director for a long-term care facility. Drs. Fetterman and Evans are qualified by their specialized knowledge, skill, experience, and education to testify about the standard of care of a physician attending to a geriatric patient in a long-term care facility. With respect to Drs. Fetterman and Evans, the requirements of Evid.R. 702(A) and (B) were met.

{¶14} At trial, Sliwinski's primary contention appears to focus on Evid.R. 702(C), the reliability of the expert testimony. Sliwinski objected to Nurse Winzler because Sliwinski "d[id not] know what her methodology was" and to Drs. Fetterman and Evans because, she argued, it was not determined that they are "testifying * * * with a scientific basis." However, a review of medical records in a medical malpractice action, such as was performed here by Nurse Winzler, Dr. Fetterman, and Dr. Evans, coupled with their experiences, are appropriate principles and methodologies to be used by a physician expert in forming medical opinions. *See Blinn v. Balint*, 9th Dist. Summit No. 26733, 2014-Ohio-3114, ¶ 33, citing *Theis v. Lane*, 6th Dist. Wood No. WD-12-047, 2013-Ohio-729, ¶ 19.

{¶15} Upon review, the trial court did not abuse its discretion by determining that the testimony of the Appellees' three experts was admissible under Evid.R. 702. To the extent that Sliwinski argues that the trial court was required to hold a separate hearing to determine the admissibility of the experts' testimony, we disagree under the circumstances of this case. To the extent that Sliwinski argues that a trial court must always hold a *Daubert* hearing prior to the testimony of an expert, the law does not support her argument. "The trial court must have the

same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable." (Emphasis omitted.) *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The trial court did not abuse its discretion in deciding not to hold a separate hearing.

{¶16} Sliwinski's assignment of error, as it relates to the admissibility of the expert witnesses' testimony, is overruled.

**Judicial Notice**

{¶17} Sliwinski further argues that the court erred in refusing to take judicial notice of OAC regulations. However, the issue of the admissibility of the OAC regulations was not preserved for appeal.

{¶18} In November 2013, Sliwinski filed a motion, pursuant to Civ.R. 44.1(A)(2), for the court to take judicial notice of certain OAC regulations. In December, the Village filed a motion in limine to exclude any testimony related to the regulations. The court denied Sliwinski's motion to take judicial notice and granted the Village's motion in limine. At trial, Sliwinski did not object to the exclusion of the regulations.[1]

{¶19} "A motion in limine 'is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury.'" *State v. Gay*, 9th Dist. Summit No. 26487, 2013-Ohio-4169, ¶ 28, quoting *State v. Echard*, 9th Dist. Summit No. 24643, 2009-Ohio-6616, ¶ 3. "At trial it is incumbent upon [the party], who has been

---

[1] We note that portions of the trial were not included in the transcript submitted on appeal. It is appellant's burden to ensure the record necessary to determine the appeal is filed with the appellate court. *Morrison v. Morrision*, 9th Dist. Summit No. 27150, 2014-Ohio-2254, ¶ 17.

temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the trial court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." (Emphasis omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986).

{¶20} Sliwinski did not raise the issue of the admissibility of the OAC regulations at trial to enable the trial court to make a final determination as to the admissibility. Therefore, she has failed to preserve for appeal her argument that the court erred in excluding the regulations at trial. Sliwinski's assignment of error, as it relates to the OAC regulations, is overruled.

**ODH Surveys**

{¶21} Lastly, Sliwinski argues that the court erred in finding that the ODH survey was, by statute, inadmissible at trial and by prohibiting her from deposing witnesses about the survey.

a. Admissibility at trial

{¶22} The trial court concluded that the ODH survey was inadmissible "[p]ursuant to R.C. 3721.02 and R.C. 5111.41[1]."[2] Statutory interpretation is a matter of law. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9. This Court reviews issues of law de novo. *J. Bowers Constr. Co., Inc. v. Gilbert*, 9th Dist. Summit No. 27044, 2014-Ohio-3576, ¶ 21. "When reviewing a matter de novo, this Court does not give deference to the trial court's decision." *State v. Dawson*, 9th Dist. Summit No. 26500, 2013-Ohio-1767, ¶ 8.

---

[2] R.C. 5111.411 was renumbered to R.C. 5165.67 on September 29, 2013. The trial court's judgment entry finding the survey inadmissible is dated May 14, 2013 and, therefore, uses the former number. Because this judgment was interlocutory, we have cited to the statutes as they appeared in the Revised Code in 2014, when a final judgment was entered. However, we also note that there were no substantive changes made to the R.C. Chapter 5165 statutes that we have cited throughout this opinion.

{¶23} Any person who believes that a resident of a nursing home has had his or her rights, as enumerated in R.C. 3721.10 to 3721.17, violated may file a report with the department of health. R.C. 3721.17(B). The department of health must investigate any complaint that "alleges that the home provided substantially less than adequate care or treatment, or substantially unsafe conditions" within 30 days or refer the matter to the attorney general. R.C. 3721.17(C)(1). "If, after an investigation, the department of health finds probable cause to believe that a violation of sections 3721.10 to 3721.17 of the Revised Code, or of rules, policies, or procedures adopted pursuant to those sections, has occurred at a home that is certified under the [M]edicare or [M]edicaid program, it shall cite one or more findings or deficiencies under sections 5165.60 to 5165.89 of the Revised Code." R.C. 3721.17(D).

{¶24} R.C. Chapter 5165 applies to nursing home facilities that receive Medicaid payments. R.C. 5165.64(A) requires the department of health to conduct "surveys" every twelve to fifteen months as a condition of certification. The department of health may conduct additional surveys "when it considers them necessary." R.C. 5165.64(B). Using the survey results, the department of health is required to deliver to the nursing facility a detailed statement of any deficiencies. R.C. 5165.68(A). The facility is then required to submit to the department of health a proposed plan of correction for each finding made in the statement of deficiency. R.C. 5165.69(A).

{¶25} R.C. 5165.67 provides as follows:

> The results of a survey of a nursing facility that is conducted under section 5165.64 of the Revised Code, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the survey, shall be used solely to determine the nursing facility's compliance with certification requirements or with this chapter or another chapter of the Revised Code. Those results of a survey, that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in any court or in any action

or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an administrative action by the department of [M]edicaid or contracting agency under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code.

Nothing in this section prohibits the results of a survey, a statement of deficiencies, or the findings and deficiencies cited in that statement on the basis of the survey under this section from being used in a criminal investigation or prosecution.

Thus, the results of an ODH survey are not admissible except in: (1) an appeal of an administrative action by the department of Medicaid (or contracting agency), (2) an action by a state department or agency to enforce a chapter of the Revised Code, or (3) criminal proceedings. Because Sliwinski's case does not fall within any of these three categories, the trial court did not err in finding that the ODH survey was inadmissible at trial.

{¶26} To the extent Sliwinski argues that R.C. 3721.02 is inapplicable, we agree. R.C. 3721.02(B) provides that "[t]he director of health shall license homes and establish procedures to be followed in inspecting and licensing homes." R.C. 3721.02(B). R.C. 3721.02 focuses on inspections related to licensing nursing homes and residential facilities. This statute does not use the term survey and applies regardless of whether a facility is receiving Medicaid payments.

{¶27} A review of the ODH survey papers proffered by Sliwinski at trial, reflect that the documents were produced pursuant to R.C. Chapter 5165. Included in the documentation proffered was a letter to the Village from ODH. This letter stated that "pursuant to a complaint investigation, [ODH] completed a survey of [the Village's] facility for the purpose of determining whether it me[t] Federal requirements for skilled nursing facilities (SNF) and nursing facilities (NF) participating in the Medicare or Medicare/Medicaid programs." R.C. 3721.02 inspections are not related to a facility's participation in Medicare/Medicaid programs.

Inspections conducted under R.C. 3721.02 apply to all licensed facilities. R.C. Chapter 5165, on the other hand, applies only to nursing facilities covered by Medicaid.

{¶28} Additionally, the documents proffered were in compliance with R.C. Chapter 5165. Specifically, the Village was provided detailed statements of deficiencies found by ODH, as required by R.C. 5165.68. The Village, in accordance with R.C. 5165.69, submitted a written plan of correction, which appears to have been approved by ODH on April 7, 2006. While it is unclear from the statute what written form inspections under R.C. 3721.02 must take, it is clear that the documents proffered by Sliwinski were not related to the licensing of the nursing home; instead, they were related to the Village's compliance with Medicare and Medicaid requirements. In a letter from ODH to the Village, ODH specified that "[b]ased upon the deficiencies cited during [the] survey, unless [the Village] correct[ed] its deficiencies and [was] in substantial compliance with the requirements set forth in 42 CFR Part 483 Subpart B, by April 28, 2006," the ODH would recommend "[m]andatory denial of payment, as provided by 42 CFR Sections 488.408 and 488.417(b), for new Medicare and Medicaid eligible admissions effective June 9, 2006."

{¶29} Having reviewed the documents proffered by Sliwinski, we conclude that R.C. 3721.02 is inapplicable and that the documents were inadmissible at trial pursuant to R.C. 5165.67. Therefore, the trial court did not err in finding the documents inadmissible at trial.

b. Discovery Deposition

{¶30} Sliwinski further argues that the court erred by prohibiting her from deposing witnesses about the ODH survey. This argument, however, was never made to the trial court and, therefore, has not been preserved for appeal.

**{¶31}** In February 2013, Sliwinski filed a "motion for [an] evidentiary ruling." In her motion, Sliwinski informed the court that she wanted to "depose or re-depose four persons concerning a Department of Health survey (investigation/inspection) conducted at [the Village] regarding complaints of statutorily substandard care of [Sekerak]." Sliwinski's motion went on to say that she "and [t]he Village ha[d] agreed prior to attempted deposition to seek [the trial] court's ruling [on] whether the use of the survey is permitted at trial and is therefore relevant and discoverable and would permit deposition on the matter." The motion only argued why Sliwinski believed the ODH survey was admissible at trial. She never argued that she should be permitted to depose the witnesses about the ODH survey regardless of its admissibility. Further, Sliwinski made no argument that the inquiry into the ODH survey results were "reasonably calculated to lead to the discovery of admissible evidence." Civ.R. 26(B)(1).

**{¶32}** Based on Sliwinski's limited argument before the trial court, we conclude that she has waived any argument on appeal that the Civil Rules permitted her to depose or re-depose witnesses about the inadmissible ODH survey. *See Bigler v. Personal Serv. Ins. Co.*, 7th Dist. Belmont No. 12 BE 10, 2014-Ohio-1467, ¶ 82 ("[W]hen a party raises one specific theory in support of admission of evidence below, he waives on appeal the theories not raised.").

**{¶33}** Sliwinski's assignment of error, as it relates to the ODH survey, is overruled.

III

**{¶34}** Sliwinski's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JOHN WOOD and DENNIS NIERMANN, Attorneys at Law, for Appellant.

MARIN T. GALVIN and STEPHAN C. KREMER, Attorneys at Law, for Appellee.

BRET C. PERRY and DONALD H. RICHARDSON, Attorneys at Law, for Appellee.