**[Cite as *Quester v. Quester*, 2024-Ohio-1456.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| NICOLE M. QUESTER | | C.A. No.    30589 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRADLEY A. QUESTER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    DR-2020-03-0658 |

DECISION AND JOURNAL ENTRY

Dated: April 17, 2024

---

STEVENSON, Presiding Judge.

{¶1}    Bradley Quester appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, modifying spousal and child support. Because the trial court failed to properly consider spousal support when computing Wife's gross income, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

{¶2}    Nicole Quester ("Wife") and Bradley Quester ("Husband") married in 2006 and divorced in 2021. The divorce decree incorporated the parties' separation agreement and shared parenting plan.

{¶3}    Under section III(D) of the separation agreement, the parties agreed to an estimated yearly base income of $220,000 for Husband. The parties agreed that Husband's estimated income was subject to review in six months. Section III(D) of the separation agreement states:

> The amount of spousal support is based upon Husband's **estimated** base income of $220,000 per year and Wife's salary of $63,835 per year. The parties stipulate that

Husband's income is **estimated** and shall be reviewed in March of 2022 to determine Husband's actual income, if the parties are unable to agree on Husband's income at that time. The purpose of the review is to better assess Husband's business income, business expenses and/or to determine Husband's efforts in seeking full time employment of similar income earning level. At this time both Husband and Wife shall have an opportunity to review any business income and expenses to determine their validity for the purpose of any spousal support calculation. Wife shall have the right to present evidence of the vocational assessment prepared for the trial and as may be updated for the review. In the event Husband's income is no longer a base income of $220,000 spousal support may be modified based upon the parties' updated income amounts so long as the spousal support calculation using the updated income amounts would result in a 10% change from the current spousal support obligation. It is specifically agreed that the review is scheduled so that neither party shall have to file a motion to modify support or require for [sic] a change in circumstance outside the 10% change mentioned above. Any potential changes to spousal support may be retroactively applied in order to ensure a fair and equitable spousal support calculation to both parties. Should the parties come to an agreement on spousal support prior to the six-month review then the parties shall cause for an Agreed Judgment Entry to be filed with the Court.

(Emphasis sic.)

{¶4} The agreed review hearing went forward in July 2022. Husband, Wife, and Michael Stinson, Wife's vocational expert, testified over the course of the four-day review hearing.

{¶5} Husband testified that he earned his bachelor's degree in economics and that his entire professional career has been in the retail energy sector. The retail energy sector is "a subsection of the energy markets of the U.S. that operate in deregulated states." Husband's employment has exclusively been in the commercial-industrial sector.

{¶6} Husband's salary often included bonuses and, with one employer, equity in the company. Husband's salary increased as he continued working in the retail energy sector. Exclusive of self-employment income, Husband started his professional career earning $44,000 per year plus bonus, and by 2020 he was earning $300,000. Husband's job titles included senior manager, structuring and complex transactions; senior manager U.S. power pricing and structure; director, US power pricing; director US power and gas pricing; head of business transformation

strategy; vice president, retail energy structuring; vice president, president and portfolio management; president; and president and partner. Husband switched employers and relocated during the marriage when necessary for job opportunities.

{¶7} Despite a few gaps in employment and exclusive of bonuses, Husband earned at least $250,000 per year from 2016 through 2020. Husband earned additional income through a consulting company, LogiQ Energy Consulting, LLC ("LogiQ"), that he started in December 2017.

{¶8} When Wife filed for divorce in March 2020, Husband was employed as president of Novo Energy Services ("Novo") where he received a $300,000 salary with no bonuses. Husband also received consulting income of approximately $23,000 in 2020. Novo terminated Husband's employment in December 2020.

{¶9} Husband pursued consulting work through LogiQ after his termination from Novo. In February 2021, Husband obtained a consulting engagement with a Mitsubishi-owned company. Husband thought this engagement would last for 18 months and lead to a job offer with the company. The consulting engagement ended, however, in early July 2021. Husband earned $111,345 through this consulting engagement. This consulting income was used when estimating Husband's base income in the separation agreement. Husband reports that the $111,345 consulting income is the only income earned in 2021.

{¶10} Husband also received $17,500 from Novo in 2021. This sum included $12,500 for an alleged severance and a $5,000 reimbursement for a prior COVID salary reduction.

{¶11} For 2022, as of the date of the review hearing, Husband claims unemployment compensation as his only income. Husband testified that he performed consulting engagements

and that, although invoices totaling approximately $22,000 were issued, he had not been paid. Husband estimated his 2022 income at $64,048.

{¶12} Husband testified that, after the July consulting engagement ended, he pursued income through his "recently launched" brokerage company, IconiQ Energy Advisors, LLC ("IconiQ"). Husband did not previously pursue IconiQ, which is licensed in Texas and Ohio, because he hoped that LogiQ would excel or that he would obtain full-time employment in a position like his prior position at Novo.

{¶13} Husband testified that he spent approximately 42 days in 2021 looking for employment and 34 days looking for employment in 2022. Husband did not retain an executive search firm, create a website or advertise his business, or go to any seminars, workshops, or conventions that were common to the industry when looking for employment. Even though he previously relocated for employment, and while he is willing to travel, Husband is no longer willing to relocate for employment purposes.

{¶14} Husband continues to reside in Houston, Texas. According to Husband, he splits rent and living expenses, including groceries and entertainment expenses, with his live-in girlfriend. Husband's monthly lease contribution for their apartment is $2,350 a month. This sum represents 50% of the monthly lease.

{¶15} Michael Stinson performed a vocational evaluation on Husband. As part of his evaluation, Stinson conducted two interviews of Husband followed by e-mail communications.

{¶16} Stinson testified as to the methodologies he utilized when assessing Husband's employability and potential income. Stinson considered Husband's interviews, employment history, and earnings history. Stinson reviewed multiple databases including the occupational employment and wage surveys from the Department of Labor, Bureau of Labor Statistics, the

Department of Labor Dictionary of Titles and Selected Characteristics of Occupations ("DOT"), the Occupational Information Network ("O*Net"), the Occupational Outlook Handbook, and SkillTran software. Stinson was aware that DOT was last revised in 1991 and supplemented in 1992 and that the O*Net code he utilized was last updated in 2019. Considering Husband's advanced education and employment history, and the fact that Husband does not have any disabilities, Stinson did not use software such as Valpar. Considering Husband's unique employment, Stinson also did not use Oasis software which breaks down occupational titles and provides information about employment earnings.

{¶17} Stinson testified that there is no government database or resource setting forth the exact earning ability for someone in Husband's role in the retail energy sector. Stinson testified that Husband's earnings from 2016 through 2020 were the best reflection of Husband's future income.

{¶18} Stinson concluded that Husband is "quite employable in the field he has chosen, working in the retail energy sector markets, and, as [Husband] prefers, * * * at the executive or management level." Stinson testified that Husband has numerous transferable skills, meaning Husband could use his skills "in either past or present employment or look for new employment." According to Stinson, Husband was not actively seeking or making sufficient efforts to obtain employment. Husband was pursuing consulting engagements even though, as of July 2021, he was aware that his consulting income was not going to be as productive as hoped. Stinson testified that Husband's choice to pursue consulting versus salaried employment was voluntary and that Husband was still qualified for the titles he previously held when working in the retail energy sector. Stinson opined that Husband's present earning capacity is between $240,000 to $300,000 a year.

{¶19} Husband objected to the admissibility of Stinson's testimony, arguing that Stinson's testimony did not comply with Evid.R. 702(A) and (C). The trial court allowed Stinson's testimony over Husband's objection.

{¶20} Wife was employed as an attorney early in the parties' marriage. After leaving a job where she was unhappy, Wife remained unemployed while Husband's career advanced and the parties relocated for his employment. Wife stayed home once the couple started having children. Wife obtained full-time employment after filing for divorce, earning $63,825.20. At the time of the review hearing, Wife's annual salary increased to $65,436.80.

{¶21} After the sale of the parties' marital home, Wife purchased a less expensive condominium where she resides with the children. Wife leases her vehicle and pays the children's private school expenses, books, and tutoring. Wife acknowledged that, even though some of her monthly discretionary expenses benefitted the children, she could reduce monthly dinner and entertainment expenses; charitable contributions; clothing and related personal expenses; travel and vacation expenses; and gift giving. Wife testified that Husband was not paying his half of the children's educational books, tuition, and tutoring.

{¶22} Wife testified that, during the marriage, the family went on beach vacations and lived a rather lavish lifestyle. Husband and Wife drove luxurious vehicles and the family lived in upscale homes during the marriage.

{¶23} According to Wife, Husband told her in early 2021 that "he was going to report a small amount of income, get out of his support obligation, and be able to keep the rest of the money." Husband allegedly "got belligerent" on this occasion and told Wife that "he couldn't wait to get [her] off of his teat * * *." The trial court believed Wife to be more credible on this point and found Husband was deliberately not working to his full earning capacity.

**{¶24}** Husband and Wife filed post-trial briefs and the trial court issued a judgment entry modifying Husband's spousal and child support obligations. Husband appeals the trial court's judgment entry, asserting three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR ONE

**THE TRIAL COURT ERRED IN ADMITTING WIFE'S EXPERT'S TESTIMONY UNDER EVID.R. 702.**

**{¶25}** Husband argues in his first assignment of error that the trial court erred when it admitted Wife's expert testimony under Evid.R. 702. Husband argues that Stinson's testimony and reports do not relate to matters outside the knowledge of a lay person and is not relevant or reliable. We disagree.

**{¶26}** Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶27}** "'The qualification and reliability requirements of Evid.R. 702 are distinct. Because even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that underlie an expert's opinion.'" *Cooper v. BASF, Inc.*, 9th Dist. Summit No. 26324, 2013-Ohio-2790, ¶ 11, quoting *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 17. "The inquiry focuses on whether the principles and methods employed by the expert are reliable, not whether the expert's conclusions are correct." *Sliwinski v. St. Edwards*, 9th Dist. Summit No. 27247, 2014-Ohio-4655, ¶ 10, citing *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611 (1998). In determining whether scientific evidence is reliable, the following factors should be considered: "(1) whether the theory or technique has been tested, (2) whether it has been subject to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." *Miller* at 611, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594 (1993).

**{¶28}** "The determination as to the admissibility of expert testimony is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Sliwinski* at ¶ 11, citing *Miller* at 616. An abuse of discretion is something more than an error of law or in the exercise of judgment, "it implies that the court's *attitude* is unreasonable, arbitrary or unconscionable." (Emphasis added.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶29}** Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of

a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24.

**{¶30}** Husband agrees that "Wife had the right to present evidence of her vocational assessment performed by Michael Stinson[.]" Husband argues that, as Stinson "testified as nothing more than a glorified accountant reviewing [his] past income[,]" his testimony is inadmissible as it does not relate to matters beyond the knowledge or experience of laypersons. Husband further argues that Stinson relies on "unreliable techniques or principles" and that, therefore, his testimony is inadmissible.

**{¶31}** Wife argues that Husband overlooks the fact the review hearing was held before the bench. Wife argues that what weight is to be given to Stinson's testimony, if any, is a matter within the discretion of the trial court.

**{¶32}** The trial court acts as gatekeeper when a matter is tried to the jury. The court's gatekeeping function includes protecting juries from misleading or unreliable expert testimony. *Daubert*, 509 U.S. at 589, 592-593. *See also Cooper*, 9th Dist. Summit No. 26324, 2013-Ohio-2790, ¶ 11; *Sliwinski*, 9th Dist. Summit No. 27247, 2014-Ohio-4655, ¶ 10.

**{¶33}** The trial court's gatekeeping role is to protect juries and is less relevant in the context of a bench trial. *Deal v. Hamilton Cty. Bd. of Edn.*, 392 F.3d 840, 852 (6th Cir.2004). Thus, the discretion of the trial court in undertaking its gatekeeper role in determining whether to admit expert testimony under *Daubert* is at its zenith during a bench trial. *See U.S. v Demjanjuk*, 367 F.3d 623, 633 (6th Cir.2004); *see also Knott v. Revolution Software, Inc.*, 181 Ohio App.3d

519, 2009-Ohio-1191, ¶ 46 (5th Dist.) (where a case is tried to the bench, the trial court is afforded even broader leeway under the already light touch afforded by the abuse of discretion standard.) A reviewing court "is not in the business of dictating to [lower] courts the amount of weight they must give to certain expert opinions." *Deal* at 852.

{¶34} When a matter is tried to the bench, the trial court is presumed to consider only relevant material and credible evidence. *State v. Green*, 9th Dist. Summit No. 29777, 2021-Ohio-2222, ¶ 22. As the trier of fact in a bench trial, the trial court "determines the credibility of witnesses and the weight to be given the evidence." *State v. Lavery*, 9th Dist. Summit No. 20591, 2001-Ohio-1638, *2 (Oct. 24, 2001). This includes determining the credibility and weight given to expert testimony. *See Angerman v. Burick*, 9th Dist. Wayne No. 02CA0028, 2003-Ohio-1469, ¶ 21 (in a bench trial, trial court found plaintiff's experts to be more credible than the defendant's expert).

{¶35} Upon review, we conclude that the trial court did not abuse its discretion in admitting Stinson's testimony. Husband agreed in the separation agreement that Wife retained the right to present evidence of a vocational assessment at the review hearing. Wife exercised this right when she called Stinson to testify.

{¶36} Husband testified that he works in unique field and that he has a "very specified skill set." Considering his experience in the retail energy sector, specifically the commercial-industrial sector, Husband is at a "fairly senior level" in the field. Due to Husband's unique field, there are no governmental codes or other resources setting forth Husband's present earning capacity. By his own testimony, Husband's employment is in a niche area that is beyond the common knowledge of a lay person.

{¶37} The trial judge presided over the review hearing. Husband cross-examined Stinson at the hearing and further presented his arguments and objections in his post-trial brief/closing arguments. Husband's challenges to Stinson's testimony, including whether he utilizes outdated methodologies and resources, relate to Stinson's credibility. As the fact finder, it was up to the trial court to assess and determine Stinson's credibility and the weight given to his testimony and opinion. *Lavery*, 9th Dist. Summit No. 20591, 2001-Ohio-1638, *2. Husband did not establish that the trial court's consideration of Stinson's testimony is

> so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" [*Jenkins*, 15 Ohio St.3d at 222], quoting *Spalding* [, 355 Mich.] at 384-385.

*Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, at ¶ 24.

{¶38} We conclude that the trial court did not abuse its discretion in admitting Stinson's testimony under Evid.R. 702. Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

## THE TRIAL COURT ERRED IN ITS AWARD OF SPOUSAL SUPPORT.

{¶39} Husband argues in his second assignment of error that the trial court erred in its award of spousal support. Husband argues that the trial court did not have jurisdiction to modify spousal support based on "earning capacity." Husband argues that the trial court improperly modified spousal support based on "earning capacity" rather than actual income, and that the trial court erred in failing to consider the parties' assets, liabilities, and court-ordered payments. We disagree.

{¶40} Whether a trial court has subject matter jurisdiction, including jurisdiction to modify support, presents a question of law that we review de novo. *Smith v. Smith*, 9th Dist.

Summit No. 21204, 2003-Ohio-1478, ¶ 10; *Baronzzi v. Gamble*, 7th Dist. Columbiana No. 22 CO 25, 2024-Ohio-154, ¶ 25.

**{¶41}** Husband does not dispute that the trial court had jurisdiction to address spousal support at the review hearing, provided the court limited its jurisdiction to determining his actual income. Husband challenges the trial court's decision on the modification. "We review a trial court's decision regarding spousal support for an abuse of discretion." *Wuscher v. Wuscher*, 9th Dist. Summit No. 27697, 2015-Ohio-5377, ¶ 15, citing *Barney v. Barney*, 9th Dist. Summit No. 26855, 2013-Ohio-5407, ¶ 11. As previously set forth, an abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. When applying an abuse of discretion standard, this Court is precluded from simply substituting its judgment for that of the trial court. *Pons*, 66 Ohio St.3d at 621.

### Trial Court's Jurisdiction

**{¶42}** Husband argues that the trial court exceeded its jurisdiction when it modified spousal support. Husband argues that the trial court exceeded its jurisdiction when it considered earning capacity, thus failing to limit its review to actual income. We disagree.

**{¶43}** "R.C. 3105.18 governs the award of spousal support and its modification." *Manos v. Manos*, 9th Dist. Summit No. 27335, 2015-Ohio-2932, ¶ 11. Pursuant to R.C. 3105.18(B), a trial court "may award reasonable spousal support to either party." A trial court may later modify spousal support if the divorce decree "expressly reserved jurisdiction to make the modification" and the trial court "finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, paragraph two of the syllabus. Additionally, "the trial court must consider the factors set forth in R.C. 3105.18(C)(1) to determine whether the existing support

order should be modified in light of the significant change in circumstances." *Manos* at ¶ 11, citing *Mandelbaum* at ¶ 31. These factors include the parties' incomes and relative earning abilities. R.C. 3105.18(C)(1)(a) and (b). Because "[t]he trial court is not required to comment on each statutory factor; * * * the record must only show that the court considered the statutory factors when making its award." *Manos* at ¶ 13.

{¶44} "Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 42. "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hare v. Isley*, 9th Dist. Summit No. 26078, 2012-Ohio-3668, ¶ 9. If the separation agreement is not ambiguous, "the trial court may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 8, citing *Dzeba v. Dzeba*, 9th Dist. Summit No. 16225, 1993 WL 498181 (Dec. 1, 1993). Therefore, "'the trial court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning.'" *Id.*, quoting *Hyder v. Pizer*, 9th Dist. Summit No. 20791, 2002 WL 570256 (Apr. 17, 2002). A trial court may clarify the terms of a separation agreement or divorce decree only "'[i]f there is good faith confusion over the interpretation to be given to a particular clause * * *.'" *Brubaker v. Brubaker*, 9th Dist. Summit No. 22821, 2006-Ohio-1035, ¶ 10, quoting *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348 (2d Dist.1993).

{¶45} The parties agreed in their separation agreement that Husband's income at that time was estimated and subject to review in six months. The parties agreed to the review hearing and Wife's right to present a vocational assessment and that neither party would be required to show a change of circumstances to modify support. Husband argues that contrary to the separation

agreement, the trial court exceeded its jurisdiction and improperly modified spousal support based on earning capacity or ability. We disagree.

{¶46} In section III(D) of the separation agreement, the parties agreed that the trial court reserved jurisdiction to review spousal support. The parties agreed to an estimated base income for Husband and that this estimated base income "shall be reviewed in March of 2022 to determine Husband's actual income, if the parties are unable to agree on Husband's income at that time." The parties further agreed that the purpose of the review hearing was "to better assess Husband's business income, business expenses and/or to determine Husband's efforts in seeking full time employment of similar income earning level[;]" that Husband and Wife retained the "opportunity to review any business income expenses to determine their validity for the purpose of any spousal support calculation[;]" and that if "Husband's income is no longer a base income of $220,000 spousal support may be modified based upon the parties' updated income amounts * * *." The parties agreed to the review hearing "so that neither party shall have to file a motion to modify support or require for [sic] a change in circumstance outside the 10% change mentioned above."

{¶47} Section III(G) of the separation agreement further addresses the trial court's continuing jurisdiction to modify support. The parties agreed in section III(G) that

> The amount of spousal support shall be subject to the Court's continuing jurisdiction and therefore is modifiable or reviewable by the Court based upon a change in the circumstances of a party, including but not limited to any substantial increase or involuntary decrease in the parties' wages, salary, bonuses and other income. "Substantial" shall be defined as being a ten percent (10%) change in the gross amount of the foregoing categories from the base income.

{¶48} We find no evidence in the record that the trial court exceeded its jurisdiction when calculating spousal support. The separation agreement does not preclude the trial court from considering earning capacity or ability, or imputing income. In fact, it permits wife to call a vocational expert, a witness that testifies to earning capacity not actual income. Pursuant to R.C.

3105.18(C)(1)(b), the trial court was required to consider Husband's "relative earning abilities * * *."

### R.C. 3105.18(C)(1)(b) – "Relative Earning Abilities"

{¶49} This Court has concluded that when considering income for spousal support purposes, R.C. 3105.l8 "requires a court to determine not only the actual income of the spouse, but also whether said income is appropriate given the spouse's earning ability." *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 46. In reaching this conclusion, we stated in *Bucalo*:

> In *Koch v. Koch*, 9th Dist. [Medina] No. 03CA00111-M, 2004-Ohio-7192, this Court considered whether a husband was voluntarily under-employed for purposes of the spousal support calculation. We noted that when determining spousal support R.C. 3105.18(C)(1) requires a court to consider the 'income' of each spouse. *Koch* at ¶ 20. Unlike the child support statute, R.C. 3119.01(C)(5), the spousal support statute, R.C. 3105.18 does not provide a definition of income. However, in *Koch* this Court found that R.C. 3105.18 includes consideration of whether a spouse is voluntarily under-employed. *Id.* Specifically, R.C. 3105.18(C)(1)(a) and (b) provide that when determining the support amount a court shall consider not only the income of the parties, but also the 'relative earning abilities of the parties[.]' R.C. 3105.18(C)(1)(b). Relative earning of a spouse mirrors the language in R.C. 3119.01(C)(5) which requires a consideration of the potential income of the parent.

(Footnote omitted.)

{¶50} With respect to spousal support and a spouse's relative earning capacity, this Court similarly stated in *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 19:

> when examining relative earning ability of the parties, consideration of earning capacity will allow the court to juxtapose one spouse's earning ability against the other spouse's earning ability. Clearly, if one spouse has substantial earning ability and the other does not, then this disparity will be a factor to be considered along with the other statutory factors when arriving at reasonable spousal support. Unlike the child support statute, there is no language in R.C. 3105.18 that directs the trial court to 'impute' income. Instead, the court is directed to examine the relative earning ability of each party. The end result is not to arrive at a specific figure so as to 'impute' income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term.

{¶51} Husband and Wife agreed in their separation agreement to a review hearing and the trial court's jurisdiction to "modify support * * *." The parties' separation agreement allowed Wife to present testimony from a vocational expert that would establish Husband's relative earning ability in addition to any testimony of his actual income. The trial court had jurisdiction to modify spousal support and, in modifying spousal support, the trial court was required to consider all the factors set forth in R.C. 3105.l8(C)(1), not just the actual income factor. The trial court's judgment entry indicates that it considered the statutory factors when making its spousal-support determination. A review based solely on actual income would be in contravention of R.C. 3105.18(C)(1). The trial court was required to consider Husband's relative earning ability under R.C. 3105.18(C)(1)(b) and this consideration included whether Husband was voluntarily underemployed. The trial court did not err when it considered Husband's earning capacity.

### Assets, Liabilities, and Court-Ordered Payments

{¶52} Citing R.C. 3105.18(C)(1)(a) and (i), Husband argues that the trial court erred in failing to consider the parties' assets and liabilities, including court-ordered child support payments and Husband's travel expenses in visiting the children. We disagree.

{¶53} As noted in *Stickney v. Stickney*, 9th Dist. Medina No. 14CA0099-M, 2016-Ohio-3379, ¶ 27, R.C. 3105.18 does not require that the trial court equalize income when determining spousal support. Rather, "[e]quity requires that a party receive at least sufficient spousal support to bring him or her to a 'reasonable standard of living, comparable to the standard maintained during the marriage'" *Saluppo v. Saluppo*, 9th Dist. Summit No. 22680, 2006-Ohio-2694, ¶ 30, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 47 (9th Dist.). While the trial court was required to consider R.C. 3105.18(C) factors, there is no requirement that the

trial court equalize income or, further, equalize income after giving credit for child support obligations.

{¶54} The trial court recognizes in its judgment entry that it "shall" consider the 14 factors in R.C. 3105.18(C)(1). Among other factors and considerations, the judgment entry references the parties' income, relative earning abilities, ages and health, education, and standard of living during the marriage. The trial court states that it "has considered all factors in ORC §3105.18" and "finds that a modification in spousal support * * * would be appropriate in this case * ** ." The trial court did not have to comment on each statutory factor. *Manos*, 9th Dist. Summit No. 27335, 2015-Ohio-2932, ¶ 13.

{¶55} We conclude that the trial court did not abuse its discretion in modifying Husband's spousal support obligation. Husband has failed to demonstrate that the modified spousal support obligation was unreasonable, arbitrary, or unconscionable. Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

### THE TRIAL COURT ERRED IN ITS AWARD OF CHILD SUPPORT.

{¶56} Husband argues in his third assignment of error that the trial court erred in modifying his child support obligation. Husband argues that the trial court erred in modifying child support without a pending motion; that if a motion to modify child support was pending, he would have presented evidence of deviation factors such as accumulated travel expenses; and that, in contravention of R.C. 3119.01, the trial court erred in calculating child support based only on Husband's gross income. We conclude that the trial court erred in its child support calculation and, accordingly, we reverse on this basis.

{¶57} An abuse of discretion standard of review also applies to this assignment of error. "A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing that it is unreasonable, arbitrary, or unconscionable." *Horner v. Tarleton*, 9th Dist. Medina No. 22CA0040-M, 2023-Ohio-1785, ¶ 29.

{¶58} Husband first argues that the trial court erred when it modified child support without a pending motion. Husband argues that, as there was no pending motion to modify, he was unaware the trial court was going to address child support and, further, he did not present evidence as to deviation factors such as the extraordinary costs associated with parenting time. Wife argues that Husband's argument is disingenuous. Wife argues that, based on the language of the divorce decree, Husband was aware that both spousal and child support were going to be addressed at the review hearing. Wife further argues that Husband's witness and exhibit lists, testimony, and arguments all show that Husband was aware that both spousal and child support were going to be addressed at the review hearing.

{¶59} "Due process requires that a party receive reasonable notice of judicial proceedings and a reasonable opportunity to be heard." *Didado v. Didado*, 9th Dist. Summit No. 20832, 2002 WL 701945, *1 (Apr. 24, 2002). "The inquiry at to what process is due depends on the facts of each case." *Ohio Assn. of Pub. School Emps., AFSCME, AFL–CIO v. Lakewood City Sch. Dist. Bd. of Edn.*, 68 Ohio St.3d 175, 177 (1994). "Thus, we review the record to determine whether [Husband] received sufficient notice of the subject matter actually addressed at the hearing." *Hale v. Hale*, 9th Dist. Medina No. 2935–M, 2000 WL 109101, *3 (Jan. 26, 2000).

{¶60} Based on our review of the record, we conclude that Husband received sufficient notice that child support was going to be addressed at the review hearing. Husband agreed to the review hearing in the separation agreement, acknowledging that the review "is scheduled so that

neither party shall have to file a motion to modify support * **." The divorce decree similarly states that "[a] review hearing regarding support will be held * * * on the 29th day of March, 2022[] at 2:00 pm." Neither the separation agreement nor the divorce decree limited the review hearing to spousal support.

{¶61} Husband filed a witness and exhibit list before the review hearing. Among other proposed exhibits, Husband identified proposed spousal and child support calculations as proposed exhibit E. This proposed exhibit included Ohio child support guideline worksheets wherein Husband proposed a range for a modified monthly child support obligation. Counsel for Husband argued that proposed exhibit "E is relevant because it is what [Husband] is proposing that the Court do in the modification of the support calculations" and because it "is what [Husband] is requesting for the modification on support." Husband argued in his post-trial brief that the trial court should retroactively modify child support to $1,342.72 for 2021 and $856.67 for 2022. Husband requested this modification without filing a motion to modify child support.

{¶62} Based on the record, including the separation agreement, divorce decree, Husband's witness and exhibit lists, and Husband's arguments, we conclude that Husband was aware that child support was going to be addressed at the review hearing. As Husband "receive[d] reasonable notice of [the] judicial proceedings and a reasonable opportunity to be heard[,]" there was no due process violation. *Didado*, 9th Dist. Summit No. 20832, 2002 WL 701945, *1. *See also Hale*, 9th Dist. Medina No. 2935–M, 2000 WL 109101, *3. Husband was aware that child support would be addressed at the review hearing and he was afforded the opportunity to present deviation factor evidence, including evidence as to incurred travel expenses when visiting the children. The trial court did not err in addressing child support at the review hearing and in its judgment entry.

{¶63} Husband further argues in his third assignment of error that, provided the trial court had authority to modify child support, it failed to properly calculate the parties' income in the Ohio Department of Job and Family Services ("ODJFS") sole/shared parenting child support computation worksheet, attached to the trial court's judgment entry. Husband explains that, while the trial court deducted $69,828.88 spousal support from his income, it failed to add $69,828.88 when calculating Wife's gross income. Husband argues that the trial court's child support calculation is contrary to R.C. 3119.01, which requires the trial court calculate child support based on the gross income of both parties.

{¶64} Wife acknowledges that the trial court failed to add the spousal support that she receives to her gross income. Wife argues that this error was a scrivener's error. Wife filed a Civ.R. 60(A) motion with the trial court to correct the error. Because her Civ.R. 60(A) motion remains pending with the trial court, Wife argues that a live controversy does not exist.

{¶65} Husband's appeal was pending before Wife filed her Civ.R. 60(A) motion with the trial court. Wife's motion remains pending with the trial court. Absent leave from this Court, the trial court is without jurisdiction to issue a nunc pro tunc entry. *Evanich v. Bridge*, 9th Dist. Lorain No. 05CA008666, 2006-Ohio-648, ¶ 6; *Bank of America, N.A. v. Edwards*, 9th Dist. Lorain Nos. 15CA010848 & 15CA010851, 2017-Ohio-4343, ¶ 33. Leave has not been requested nor granted. Husband appeals a final, appealable order and this Court has jurisdiction to address his assignments of error.

{¶66} The parties agree that, when calculating child support, the trial court failed to include spousal support as part of Wife's gross income. Accordingly, as the trial court failed to properly calculate Wife's gross income, we sustained Husband's third assignment of error on this basis.

III.

**{¶67}** For the reasons set forth above, Husband's first and second assignments of error are overruled. Husband's third assignment of error is sustained as the trial court failed to consider the amount of spousal support received and, thus, failed to properly compute Wife's gross income. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

SCOT STEVENSON
FOR THE COURT

CARR, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

SUTTON, J.
<u>CONCURS IN JUDGMENT ONLY.</u>


<u>APPEARANCES:</u>

CORINNE HOOVER SIX and RACHEL L. SMICK, Attorneys at Law, for Appellant.

TODD MAZZOLA, L. TERRENCE UFHOLZ, and SARAH E. HEID, Attorneys at Law, for Appellee.