[Cite as *Cleveland v. Newell*, 2024-Ohio-2064.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112873 |
| v. | : | |
| JUDITH Y. NEWELL, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** May 30, 2024

Criminal Appeal from the Cleveland Municipal Court
Case No. 2023 CRB 000127

### *Appearances:*

Holland & Muirden and J. Jeffrey Holland, *for appellee*.

Judith Y. Newell, *pro se*.

MARY EILEEN KILBANE, P.J.:

{¶ 1}  Defendant-appellant Judith Y. Newell ("Judith"), pro se, appeals her convictions.  For the following reasons, we affirm and remand for the issuance of a nunc pro tunc judgment entry.

**Factual and Procedural History**

{¶ 2} At all times, Judith was pro se. In January 2021, while residing on Christine Avenue in Cleveland, Ohio, Judith allegedly placed poison in her yard where it was accessible to companion animals, such as cats and dogs. Judith and her next door neighbor of almost 30 years, Leonard Butler ("Butler"), presented at trial differing versions of what occurred in January 2021.

{¶ 3} According to Butler, on January 24, 2021, he saw Judith placing a mixture around the perimeter of her property. Butler approached Judith and allegedly observed Judith place rat poison, chicken, chicken bones, and mothballs around her yard. Because Butler observed some of the poison mixture on his property, and he was concerned about the safety of his dogs and grandchildren, Butler complained to the police about Judith placing poison on her property.

{¶ 4} According to Judith, on January 24, 2021, she placed Rat-Away, a repellant safe for pests and humans, on approximately ten feet of her property, flush with the foundation, before she was confronted by Butler. Butler allegedly threatened to kill Judith, causing her to return to the inside of her home.

{¶ 5} On the day of the confrontation between Judith and Butler, Officer Scott Floyd ("Officer Floyd"), a patrol officer with the Cleveland Division of Police, and his partner were dispatched to Judith's home. Officer Floyd did not prepare a report following the incident, and he did not recall many details of the service call. Officer Floyd, a thirty-year veteran of the police force, recalled speaking with a husband and wife who had lodged a complaint against their neighbor, Judith,

although Officer Floyd could not remember the neighbors' names. Officer Floyd unsuccessfully attempted to speak with Judith. Officer Floyd testified that he did not observe what he considered illegal behavior or product on the ground that he believed to be poison. Officer Floyd further testified that he did not recall anyone being injured by the alleged poison so it was not necessary for him or his partner to take any further action. According to Floyd, complaints about animals would typically be referred to humane officers who are trained to investigate such issues, and Officer Floyd would have left the bulk of the investigation to the humane officers. Officer Floyd stated that he referred the complaint in this matter to the Cleveland Animal Protective League ("APL"), and he would not dispute that humane officers subsequently investigated Judith's property on January 25, 2021:

> **Assistant Prosecuting Attorney**: So if you were told that an APL Officer was out at the property on the 25th of January 2021 and found a great deal of objects that they thought appeared to be poison mixed with meat on the ground, you wouldn't dispute that as being true, would you?

> **Officer Floyd**: No.

Tr. 610.

{¶ 6} The next day, on January 25, 2021, Joseph Dell'Anno ("Dell'Anno"), a humane agent for over eight years and then chief humane investigator, responded to a complaint about poison placed on Judith's property. Dell'Anno was dressed in uniform and drove a marked vehicle. Upon arrival, several neighbors approached Dell'Anno and pointed out the poison, meat, chicken bones, and mothballs scattered on Judith's property. Dell'Anno observed "a very large amount of poison laid

throughout the front of the house and into the side of it as well." Tr. 240. One neighbor stated the poison was accessible to his animals and roaming animals in the area, and he had observed an orange cat and two other cats consuming the poison.

{¶ 7} Judith was not home, but her brother, Vincent Newell ("Vincent"), communicated with Dell'Anno from a second-floor window. Dell'Anno identified himself as a humane agent and stated he was there to talk about the poison placed in the yard. Dell'Anno informed Vincent that it is illegal to place poison around your house and the product needed to be removed. Vincent allegedly yelled profanities and instructed Dell'Anno to leave the property. Dell'Anno left a written notice with his phone number and returned to his department.

{¶ 8} While driving to his department, Dell'Anno observed an orange cat in distress approximately two to three blocks from Judith's property; the cat matched the description provided by one of the neighbors of a cat consuming poison on Judith's property. Dell'Anno collected the animal and transported it to the APL, but the animal died before arrival. A necropsy was subsequently performed by Dr. Allison Lash ("Dr. Lash"), a veterinarian with the APL.

{¶ 9} On January 26, 2021, the day after Dell'Anno was at Judith's home, a woman telephoned Dell'Anno. The individual referenced the notice Dell'Anno left at Judith's property and, according to Dell'Anno, identified herself as Judith. Per Dell'Anno, the caller stated she was aggravated by Dell'Anno's presence at her property and told him several times not to return to her home or there would be a problem. Dell'Anno explained to the caller, whom he believed was Judith, that it is

illegal to place poison around your home in the manner that she had done. The caller responded to Dell'Anno by saying, "It's my property. I can do what I want." Tr. 243. The caller neither denied the product in her yard was poison nor claimed she was utilizing repellant rather than poison on her property. Dell'Anno testified that the caller told him that he, Officer Dell'Anno, had placed the poison on Judith's property.

{¶ 10} Because Dell'Anno felt the poison posed a danger to animals in the area, he obtained a search warrant, and executed it on January 27, 2021. Vincent provided Dell'Anno and his fellow officers access to Judith's property. Inside the house, the officers discovered three or four bags of rat poison and orange caps. Dell'Anno described this as a large amount of rat poison for the size of Judith's home and property. Dell'Anno stated that the rat poison placed outside on the yard was not the same rat poison found inside Judith's house. Upon examination of the exterior of Judith's home, Dell'Anno discovered orange caps in the backyard — similar to those found inside — filled with rat poison.

{¶ 11} While executing the search warrant, Judith arrived at her home by car. Dell'Anno searched her vehicle and found more rat poison, similar to the type found inside her house. Dell'Anno testified that he asked Judith not to place any additional poison on her property, but Judith provided no response.

{¶ 12} The humane agents took photographs of the various items scattered on Judith's yard and the bags of confiscated poison and vacuumed up the poison scattered on Judith's yard. Dell'Anno testified that the product filled at least two

large contractor garbage bags: "Uh, we removed poison, lots and lots of poison. Some debris did get in the bag, but it was very high majority poison. Lots of poison." Tr. 271. Judith denied Dell'Anno could have collected two large bags of product from her yard and claimed surveillance footage would demonstrate who placed the product on her property.

{¶ 13} On December 28, 2022, the city of Cleveland ("city") charged Judith with one count of poisoning animals in violation of R.C. 959.03, a misdemeanor of the fourth degree, and one count of attempted prohibition concerning companion animals in violation of R.C. 959.131(B) and 2923.02, a misdemeanor of the second degree.

{¶ 14} On May 22, 2023, the court commenced a jury trial. At trial, the following individuals presented testimony: Butler, Dell'Anno, Dr. Lash, Vincent, Judith, and Officer Floyd.

**Butler**

{¶ 15} Butler testified to his observations on January 24, 2021, and his encounter with his neighbor, Judith. Butler testified that he knows what rat poison looks like and the bag Judith held was marked "rat poison." Butler also alleged that Judith placed chicken, chicken bones, and mothballs on her property. Butler testified that when he confronted Judith about her actions, she did not deny she was placing poison on her property nor state the product was a repellant but responded that she can do anything on her property that she wants to do. Butler testified that the photographs presented by the city fairly and accurately represented the products

placed on Judith's property.  Butler testified that on January 25, 2021, he observed an orange cat and two kittens on Judith's property consuming the materials allegedly laid out by Judith.  Butler testified that the next day he observed two dead kittens at the neighborhood store that he believed were the same kittens that had consumed poison on Judith's property.

{¶ 16} Butler's testimony also demonstrated animosity between the neighbors.  Butler testified that prior to the incident in question, Judith called the police on him whenever he completed household repairs, and on January 25, 2021, Judith showed him a handwritten map of their properties claiming that half of Butler's property belonged to Judith.  Butler described Judith as an evil person but denied he had any bias against her.  Butler denied when asked whether he threatened to kill Judith on January 24, 2021, or that in the past he threw dead cats and rats onto Judith's front and back porches.  Butler also denied Judith's allegation that he, rather than Judith, placed the poison in Judith's yard.

**Dell'Anno**

{¶ 17} Dell'Anno testified that he underwent mandatory training required for humane agents that was approved by the Ohio Peace Officer Training Academy as well as supplemental training.  Dell'Anno also stated he trains humane agents.  In his capacity as a humane agent, Dell'Anno has had experience with poisons, and he is able to recognize rat and mouse poison by sight and smell.  Dell'Anno also testified to the events of January 25 through January 27, 2021, including his interactions with Judith and Vincent, and his conclusion that Judith placed poison on her

property that was accessible to companion animals. Dell'Anno testified that the January 26, 2021 caller with whom he spoke to while at his office, on the day after he visited Judith's home, had the same voice as Judith — who questioned him at trial — and he believed the caller was Judith.

{¶ 18} In response to Judith's questions at trial, Dell'Anno conceded he did not observe any surveillance camera footage of Judith's property; he did not personally observe someone place poison on Judith's property; and he did not conduct forensic chemical testing on the products removed from Judith's property. Dell'Anno denied that the APL placed poison in yards or attempted to control wildlife.

{¶ 19} Dell'Anno further testified that the photographs obtained on January 27, 2021, fairly and accurately depicted the poison, mothballs, meat, and bones placed in Judith's property. Dell'Anno testified that laying down meat would attract animals rather than repel them. Dell'Anno also testified that the products were accessible to cats and dogs. Dell'Anno stated that he saved a small amount of the products collected from Judith's yard on January 27, 2021, that was introduced as a trial exhibit. The sample was double-bagged, and Dell'Anno testified that he could still smell the strong odor of mothballs and poison, items he is familiar with due to his employment as a humane agent.

**Dr. Lash**

{¶ 20} The jury heard testimony from Dr. Lash, an Ohio-licensed veterinarian since 2005. At all relevant times, Dr. Lash was employed by the APL;

her work responsibilities included the examination of animals picked up by the Cleveland Humane Investigations Department. Dr. Lash testified that she "typically assume[s] no human foul play until proven otherwise." Tr. 203. Dr. Lash provided her opinions based on her training and experience as a veterinarian.

{¶ 21} Dr. Lash performed a post-mortem examination on an orange cat presented by Dell'Anno. Following completion of the post-mortem examination, Dr. Lash reviewed the incident report and photographs that were taken at Judith's property. Dr. Lash testified that the photographs, introduced as exhibits, showed a variety of baits or poisons, repellants, and mothballs scattered throughout Judith's yard.

{¶ 22} During the post-mortem of the orange cat, Dr. Lash observed small square pieces or pellets in the cat's intestinal tract that were not typical of cat food, but looked like bait used for animals. The contents of the orange cat's stomach were consistent with the objects — specifically, the poison, and not repellant — found on Judith's property and in the exhibits. Dr. Lash stated that the cat's stomach contents showed the animal came to Judith's property and consumed the items placed on the ground.

{¶ 23} Dr. Lash stated that bait tastes good, it is intended to be eaten, and is poisonous. Dr. Lash also stated that people who want to attract cats and dogs tend to mix poison with meat or pet food. Dr. Lash testified that mothballs are poisonous if consumed by animals. Dr. Lash further testified that she is familiar with rat and mouse poison, but rat and mouse repellant does not typically enter her realm. Dr.

Lash testified that repellant, which is intended to repel animals, does not taste good, and animals do not typically eat repellant but if an animal ingests repellant, it could be fatal. Dr. Lash further testified that "any reasonable person would know that poison is poison" and "something intended to poison an animal could poison other animals." Tr. 204, 205.

**Vincent**

{¶ 24} Vincent, who interacted with Dell'Anno on January 24 and January 26, 2021, conceded he told Dell'Anno that poison was used on Judith's property, but he also stated the product was legal:

> I told him that you — I called it poison, you know. I knew what it was. When he asked me, I said, yes. She's been putting stuff down. I say, but it's not illegal because they couldn't sell it to her if it was illegal without a license and stuff. This is stuff they use to put pests — they put down to rid the yard of pests.
>
> * * *
>
> When I was saying poison, that's what I called it, but I know that they couldn't have sold it to you. I told him you went to buy some more and stuff because they couldn't sell it to you unless it was — unless it was legal to use. And I knew you went to Home Depot or Lowe's to buy it.

Tr. 412-413.

**Judith**

{¶ 25} Judith testified on her own behalf. Judith testified that in late December 2020 or early January 2021, a representative from the APL requested permission from her to place poison on her property and the neighboring property to attempt to combat wild animals in the abandoned house next door. Judith

described black plastic objects that were laid by the APL prior to January 15, 2021. Judith could not state if the APL also placed pellets or mothballs on her property, claiming her eyesight is poor and she did not pay close attention to the materials that had been laid down.

{¶ 26} Judith admitted that she purchased and placed a small amount of Rat-Away, a repellant, on her property. Judith testified that Rat-Away smells the same as rat poison. Judith denied that she violated any law and stated she did not have any motive to harm animals. Judith stated that on January 24, 2021, the only product on her property was Rat-Away.

{¶ 27} Judith testified that following Dell'Anno's visit to her house on January 25, 2021, she called the phone number associated with the notice left at her house but she left a message and did not speak with Dell'Anno. Judith testified that she did not know who would have contacted Dell'Anno and falsely represented herself as Judith.

{¶ 28} Judith denied that from January 24, 2021, through January 27, 2021, anyone informed her that poison mixed with food was around the perimeter of her property and needed to be cleaned up. Judith testified that she was not aware of any allegation that there was poison mixed with food on her property until well after January 27, 2021. Judith also testified that the humane agents vacuumed product from the Butlers' property rather than from her property. Judith further stated that Butler deposited items on her property prior to January 2021, and she believed either Butler or the APL representative who approached her in December 2020 or

January 2021 were "the only two that I would anticipate would have put anything on the property." Tr. 538.

{¶ 29} After the introduction of all the testimony, Judith moved to dismiss pursuant to Crim.R. 29; the trial court denied the motion. The jury found Judith not guilty of poisoning an animal but guilty of an attempted prohibition concerning companion animals. Following the verdict, the municipal court sentenced Judith to 60 days in jail that was suspended contingent upon her successful completion of a one-year probation period, and a $300 fine.

{¶ 30} On June 7, 2023, Judith filed a timely notice of appeal presenting these nine assignments of error, verbatim:

> Assignment of Error I: The trial court erred by allowing the expert testimony by an unqualified witness on matters which she had no expertise in. This was done in violation of R. Evid. R. 702(A), (B), (C)(1), (2), (3) and Fed. R. Evid. R. 702 in violation of R. Evid. R. 102.
>
> Assignment of Error II: The trial court erred by permitting Dr. A.L. DVM to testify on matters which required a forensic chemist to be valid. She lacked the necessary knowledge, experience, or ability to preform [sic] the scientific testing required to meet the minimum pre requisite [sic] standards to be called an expert in that area. R. Evid. R. 702(A)(B)(C)(1)(2)(3), Fed. R. Evid. 702.
>
> Assignment of Error III: The trial court erred by using Dr. A.L. DVM to testify as an expert, to make identification from photos of unknown substance as poison states exhibits 1-10, and just looking at substance without any test. Without any scientific methodology. Also in violation of R. Evid. R.901(B)(3)(4)(5)(6)(A). authentication and identification.
>
> Assignment of Error IV: The trial court erred by allowing expert to testify Rat Away Rat and Mouse Repellant was Poison. False testimony by an unqualified person[.]

Assignment of Error V: Trial court erred by allowing Detective JDA to testify as an expert on things he had none of the required qualifications to be eligible to attest to as an expert. In violation of R. Evid. R. 702(A)(B)(C)(1)(2)(3), Fed. R. Evid. 901(B)(3)(4)(5)(6)(A). Fed. R. Evid. R. 702 Fed. R. Evid. R. 902.

Assignment of Error VI: Trial court erred by committing factual error : in violation of defendant's Federal and state constitutional rights a guilty plea was entered without the defendant's knowledge or consent. Rendering the trial conviction illegal and as a matter of law must be vacated.

Assignment of Error VII: The trial court erred there was no proof of the elements of the crimes charged. R.C. 2923.02. Requires one knowingly and purposely attempt to commit an offense or engage in a conduct that if successful would result in the offense.

Assignment of Error VIII: The Prosecutor repeatedly asked all state's witnesses leading questions on direct examination even after coaching them before putting them on the stand. Violating R. Evid. R. 611(C) see complete transcript.

Assignment of Error IX: [E]rror failure of court to strike the testimony of state's witness LB perjured unsupported by any evidence.

The municipal court stayed Judith's sentence pending this appeal.

{¶ 31} On March 19, 2024, this court, pursuant to *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21, sua sponte requested the parties to brief the issue of whether Judith's speedy trial rights were violated.[1]

**Legal Analysis**

{¶ 32} Initially, we note that Judith acted pro se in the trial court and presents herself pro se on appeal. This court has previously recognized

---

[1] The parties timely submitted supplemental briefs on the speedy trial issue, and a review of the supplemental briefing indicates no speedy trial violations occurred.

a pro se litigant may face certain difficulties when choosing to represent oneself. Although a pro se litigant may be afforded reasonable latitude, there are limits to a court's leniency. *Henderson v. Henderson*, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶ 22. Pro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel. *In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 22.

*Saeed v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 104617, 2017-Ohio-935, ¶ 7. Thus, we presume Judith had knowledge of the law, legal procedures, and appellate process, including App.R. 12 and 16, regarding her burden of demonstrating error on appeal and the requirements for her appellate brief.

{¶ 33} For ease of discussion, we will address Judith's assignments of error out of order.

**Admission of Dr. Lash's Testimony**

{¶ 34} Because Judith's first, second, third, and fourth assignments of error address the same topic, we will discuss these arguments collectively. In her first assignment of error, Judith argues that the trial court erred when it allowed Dr. Lash to testify on matters about which she had no expertise, in violation of Evid.R. 702. Specifically, Judith argues that Dr. Lash was not qualified to identify poison. In her second assignment of error, Judith argues that Dr. Lash was permitted to testify on matters for which she lacked the necessary knowledge, experience, or ability to perform the required scientific testing. In her third assignment of error, Judith argues that Dr. Lash was permitted to identify poison from photographs rather than

performing tests on the items.[2]  In her fourth assignment of error, Judith argues that the trial court erred when it permitted Dr. Lash to testify that the product "Rat-Away" constituted a poison rather than a repellant.

{¶ 35} Initially, we note that Judith did not object to Dr. Lash's qualifications during trial.  Accordingly, Judith has waived all but plain error.  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 136.  To prevail under the plain-error standard, Judith must show that an error occurred, that the error was obvious, and the error affected her substantial rights.  Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) (an error affects substantial rights only when it affects the outcome of the trial).  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Nicholson*, Slip Opinion No. 2024-Ohio-604, ¶ 114, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 36} A trial court is not required to expressly state in open court that a witness is qualified as an expert before the individual testifies.  *State v. Waskelis*, 11th Dist. Portage No. 2011-P-0035, 2012-Ohio-3030, ¶ 64.  Although the court here did not specifically state that Dr. Lash was an expert witness, the city established that Dr. Lash possessed the requisite skill, experience, training, and education

---

[2] Judith's third assignment of error also references the trial court's alleged erroneous admission of Dell'Anno's testimony about poison.  We will address the portion of the third assignment of error that relates to Dell'Anno below, in conjunction with Judith's fifth assignment of error.

required to qualify her as an expert. Dr. Lash's testimony established that she graduated from veterinarian school in 2005 and has been licensed to practice in Ohio since her graduation. Dr. Lash testified that she has been employed with the APL for almost 20 years, and her work includes the examination of animals collected by the humane department. Dr. Lash testified that her conclusions were based upon her experience in emergency medicine, shelter medicine, and forensic medicine.

{¶ 37} Dr. Lash stated she is familiar with rat and mouse poison that is fatal if consumed. Dr. Lash testified that mothballs are poisonous if eaten. Dr. Lash further testified that the items depicted in the city's exhibits — photographs taken by humane agents on January 27, 2021 — depicted poison, repellant, and mothballs on Judith's property. The pictures show grey and brown objects, but no black plastic objects.

{¶ 38} As to the bag of Rat-Away repellant that was discovered in Judith's basement, Dr. Lash agreed that the item was a repellant, and Dr. Lash stated she is not as familiar with repellants. Dr. Lash testified that animals are unlikely to consume repellants because they typically smell bad, but ingestion of a repellant could cause death.

{¶ 39} Where expert testimony is dependent upon experience and knowledge of the witness rather than the specific application of a theory or technique, such testimony is governed by Evid.R. 703 that reads: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶ 40} Here, Dr. Lash's testimony as to the fact that some of the objects found on Judith's property were poison and the harmful effects of poison and Rat-Away repellant were based upon the doctor's personal knowledge and experience. Dr. Lash was qualified to submit her opinion on those topics, and the trial court did not commit plain error when it allowed Dr. Lash's expert testimony on this issue.

{¶ 41} Judith argues that the requirements set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), necessitated forensic testing before Dr. Lash could conclude the products in her yard were poison. Judith's reliance on *Daubert* in this matter is misapplied. The *Daubert* court identified factors that evaluated the reliability of an expert's methodology. However, the *Daubert* factors do not apply in every case, particularly where the expert testimony stems from the expert's personal knowledge or experience. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150-151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("[S]cientific studies are not the exclusive means to establish reliability under *Daubert*. Rather, the relevant reliability concerns may focus upon personal knowledge or experience."). The testimony of Dr. Lash was not based on novel scientific theories or methods that needed to be scrutinized by the trial court under *Daubert*.

{¶ 42} Judith's first, second, and fourth assignments of error and the portion of her third assignment of error that relates to Dr. Lash's testimony are without merit and are overruled.

**Admission of Officer Dell'Anno's Testimony**

{¶ 43} We collectively discuss the portion of Judith's third assignment of error that relates to Dell'Anno's testimony and the fifth assignment of error. In the third assignment of error, Judith argues that Dell'Anno could not identify the items in her yard were poison without formally testing the products, and her fifth assignment of error argues that the trial court erred when it allowed Dell'Anno to testify as an expert when he was not qualified as one.

{¶ 44} Dell'Anno was offered as a lay witness rather than an expert witness. Thus, we analyze whether Dell'Anno's opinion testimony was admissible under Evid.R. 701. We again note that Judith did not object to the admission of Dell'Anno's testimony and, therefore, we review these assignments of error for plain error.

{¶ 45} Evid.R. 701 reads:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶ 46} "'Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702.'" *Beachwood v. Pearl*, 2018-Ohio-1635, 111 N.E.3d 620, ¶ 68 (8th Dist.), quoting *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee*, 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737. This court has admitted the testimony of a lay witness under Evid.R. 701 where

the testimony is based on the witness's training or experience; the testimony relates to the witness's personal observations pursuant to an investigation; and the testimony is helpful to determine a fact at issue. *Pearl*; *see also State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 52-53 (Officers' testimony that was based on their training and experience; was applied to their firsthand observations; and was helpful to determine a fact issue was admissible pursuant to Evid.R. 701.); *Primeau* at ¶ 75 (An officer's testimony was admissible under Evid.R. 701 where his "description of the photos was based on his experience as a police officer, his previous investigations of assaults, and his perception of [the offender's] lacerations at the time."); *State v. Cooper*, 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817, ¶ 18 (An officer's opinion was admissible where it was "based on his experience as a police officer, his previous investigations of forgeries, * * * his perception of the handwriting samples at issue," and was helpful to determine a fact issue.)

{¶ 47} Dell'Anno testified that he is the chief humane investigator, and he has served as a humane agent for over eight years. Dell'Anno stated that this is a law enforcement position for which he received mandatory training approved by the Ohio Peace Officer Training Academy. As a humane agent, Dell'Anno is trained on and experienced in detecting signs of neglect, abuse, and abandonment in animals. He also has work experience with poison, and Dell'Anno testified that he can recognize rat and mouse poison by sight and smell.

{¶ 48} Dell'Anno testified that the items he observed and removed from Judith's property consisted of poison, mothballs, meat, and bones. Dell'Anno further testified that he secured several bags of rat poison from the interior of Judith's home. Dell'Anno testified that he and other humane agents vacuumed up the poison and other items from Judith's yard, and in doing so they filled at least two large contractor bags.

{¶ 49} Dell'Anno stated that the poison removed from Judith's yard had a strong odor, and the pictures he obtained on January 27, 2021, that were marked as trial exhibits fairly and accurately depicted the poison, mothballs, meat, and bones scattered on Judith's property.

{¶ 50} Dell'Anno's testimony that the items on Judith's property were poison was based on his training and experience, and his testimony was based upon his personal observations during his investigation. Dell'Anno's testimony was helpful to determine a fact in issue — whether Judith placed poison in a location that was accessible to companion animals. The trial court did not commit plain error when it allowed Dell'Anno to testify on these matters.

{¶ 51} Judith's argument that the "Rat-Away" product found in her home was a repellant has no bearing on whether Dell'Anno's testimony was properly admitted pursuant to Evid.R. 701.

{¶ 52} Judith's third assignment of error, as it relates to Dell'Anno, and her fifth assignment of error are without merit and are overruled.

**Guilty Plea**

{¶ 53} In the sixth assignment of error, Judith argues that the trial court erred when it accepted a guilty plea without Judith's knowledge. Judith did not enter a plea in this matter. The case was tried to a jury, and Judith was found not guilty of poisoning animals in violation of R.C. 959.03 and guilty of attempted prohibition concerning companion animals in violation of R.C. 959.131(B) and 2923.02. Since Judith did not enter a guilty plea, her sixth assignment of error is without merit and is overruled.

**Elements of the Offense**

{¶ 54} In the seventh assignment of error, Judith argues that the trial court erred because no proof was introduced to establish the elements of the crimes charged. The majority of Judith's arguments relate to the charge of poisoning animals for which Judith was found not guilty. We address both sufficiency of the evidence and manifest weight of the evidence arguments in regard to the charge of attempted prohibition concerning companion animals in violation of R.C. 959.131(B) and the attempt statute, R.C. 2923.02.[3]

{¶ 55} R.C. 959.131(B) reads:

> No person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal.

---

[3] The attempt statute reads: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

Companion animals include "any animal that is kept inside a residential dwelling and any dog or cat regardless of where it is kept, * * * [but] does not include livestock or any wild animal."  R.C. 959.131 (A)(1).

**Sufficiency of the Evidence**

{¶ 56} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted.  *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.  An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction.  *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387.  A sufficiency of the evidence argument is not a factual determination, but a question of law.  *Id.*

{¶ 57} In a sufficiency inquiry, we also assume the city's witnesses testified truthfully and evaluate whether that testimony, along with any other evidence introduced at trial, satisfies each element of the offense.  *In re D.R.S.*, 8th Dist.

Cuyahoga No. 103584, 2016-Ohio-3262, ¶ 23. The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25, citing *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *Wells* at ¶ 25, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is "evidence that requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *Wells* at ¶ 25, quoting *Cassano* at ¶ 13; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."). Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

{¶ 58} Butler testified that he saw Judith place a mixture of poison, chicken, and chicken bones as well as mothballs, around her yard. Butler stated he observed Judith with a bag marked as rat poison.

{¶ 59} Dr. Lash stated she is familiar with rat and mouse poison. Dr. Lash testified that the products depicted in the trial exhibits contained animal bait, animal repellant, and mothballs. Dr. Lash testified that bait and mothballs are

poisonous to animals and the ingestion of repellant could kill an animal. Dr. Lash further testified that one would mix poison with pet food or meat to attract cats or dogs, and one would not mix poison with meat if you simply wanted to repel animals.

{¶ 60} Dell'Anno, a humane investigator, testified that he is familiar with rat and mouse poison, and based upon his training he can recognize poison by smell and sight. Dell'Anno testified that pursuant to his investigation — which included conversations with Judith and Vincent as well as his own observations at Judith's property — he believed Judith placed poison on her property and that the poison posed a risk to companion animals in the vicinity of Judith's residence. According to Dell'Anno, Judith never denied that she placed poison on her property but told him that she could do whatever she wanted to do on her own property. Dell'Anno also stated that Vincent informed him that he did not "have anything to do with [Judith] and that poison." Tr. 342.

{¶ 61} Judith testified at trial that she did not attempt to poison any animals. Judith testified that she placed legally purchased biodegradable repellant on her property that was safe for pests and humans. Judith presented receipts for the purchase of rat repellant. Judith denied speaking with Dell'Anno on the telephone — in contrast to Dell'Anno's testimony. Judith testified that either the APL or Butler placed the poison and other items on her property.

{¶ 62} While there was clearly animosity between Judith and Butler, and Judith argued others placed the poison on her property, after reviewing the evidence

in a light most favorable to the city, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**Manifest Weight of the Evidence**

{¶ 63} A manifest weight challenge questions the credibility of the evidence presented and examines whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins* at 390. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*.

{¶ 64} Butler testified that he saw Judith place poison on her property. Vincent referenced the product Judith placed in the yard as poison. Dr. Lash and

Dell'Anno testified that the products on Judith's lawn included poison that is harmful to companion animals. Butler and Dell'Anno testified that the poison on Judith's lawn was accessible to animals, including cats in the neighborhood. Dell'Anno testified that he spoke with Judith and she neither denied placing poison on her property nor argued that she placed animal repellant in her yard but told him she could do whatever she wanted on her own property. While Judith denied at trial that she placed anything but repellant on her yard, the testimony from Butler, Dell'Anno, and Dr. Lash indicates the presence of poison that was accessible to companion animals.

{¶ 65} After reviewing the record in this case, we cannot say this is an "exceptional case" where the trial court clearly lost its way and created such a manifest miscarriage of justice that Judith's conviction was against the manifest weight of the evidence. *Thompkins* at 387.

{¶ 66} For the foregoing reasons, we find that Judith's conviction was supported by sufficient evidence and her conviction was not against the manifest weight of the evidence. Accordingly, Judith's seventh assignment of error is overruled.

**Leading Questions**

{¶ 67} In the eighth assignment of error, Judith argues that the trial court erred when it allowed counsel for the city to ask its own witnesses leading questions. The assignment of error reads verbatim:

> The Prosecutor repeatedly asked all state's witnesses leading questions on direct examination even after coaching them before putting them on the stand. Violating R. Evid. R. 611(C) see complete transcript. Page 118, 120, 123, 124, 178-235.

Appellant's brief, page 10. The only other reference to the eighth assignment of error within Judith's briefings argues that the assistant prosecuting attorney violated Evid.R. 611(C) during the direct examination of the city's witnesses, and references the following transcript pages: 178-192, 228-233, 234-263, 339-359, and 598-611. No case law is provided in support of Judith's arguments nor any detailed explanation as to how counsel's questioning was in derogation of Evid.R. 611(C).

{¶ 68} It is the responsibility of the appellant, not this court, to present an argument on each assignment of error and the reasoning in support of those arguments, including citations to authorities, statutes, and the portions of the record upon which appellant relies. App.R. 16(A)(7). "'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily *fatal*.'" (Emphasis added.) *State v. Joziuk*, 9th Dist. Summit No. 23023, 2006-Ohio-5421, ¶ 7, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist.1996).

{¶ 69} Pursuant to App.R. 12(A)(2), this court may disregard an assignment of error where the appellant fails to separately argue the assigned error as required under App.R. 16(A). *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 4, quoting App.R. 12(A)(2). Judith fails to present any citation to

relevant legal authority or statutes to support this assigned error and fails to present an argument in support of her assigned error. Accordingly, and pursuant to App.R. 12(A)(2), we decline to address Judith's eighth assignment of error.

**Admission of Leonard Butler's Testimony**

{¶ 70} In the ninth assignment of error, Judith argues that the trial court erred when it allowed the testimony of Butler because the testimony was unsupported by any evidence and Butler perjured himself. Judith does not cite to specific statements rendered by Butler, but references the entirety of Butler's transcribed testimony, and she does not cite to any case law in support of this argument. Judith also argues that due process was not followed by the trial court. Judith's due process arguments are many including her claim that the trial court refused to allow a preliminary hearing, the trial court failed to send the case to a grand jury, and "the judge tried to force me to word my questions the way the prosecutor wanted them worded." Appellants' brief, page 28. The only citation listed in support of these arguments relates to destruction of the deceased orange cat. Since Judith was found not guilty on the charge of poisoning the orange cat, her argument that her due process rights were violated when the APL destroyed exculpatory evidence — the cat — is irrelevant to the charge of an attempted prohibition concerning companion animals and is moot.

{¶ 71} Judith fails to present any citation to relevant legal authority, statutes, or parts of the record to support this assigned error and, therefore, this court declines to address the ninth assignment of error.

**Nunc Pro Tunc Entry**

{¶ 72} A review of the record shows a clerical error in the trial court's June 12, 2023 judgment entry. Trial courts retain jurisdiction to correct clerical errors in judgment entries so that the entries accurately reflect the trial court's decision. *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19; Crim.R. 36 ("Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."). Clerical mistakes refer to mistakes or omissions that are "mechanical in nature and apparent on the record" and do not address a legal decision or judgment. *State v. Brown*, 136 Ohio App.3d 816, 820, 2000-Ohio-1660, 737 N.E.2d 1057 (3d Dist.2000), citing *Dentsply Internal., Inc. v. Kostas*, 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (8th Dist.1985).

{¶ 73} Although the record and transcript reflect that the city charged Judith under R.C. 959.131(B) and the jury found Judith guilty of that offense, the June 12, 2023 judgment entry states Judith was found guilty of R.C. 959.131(D)(1). Because the error is a clerical error, having no impact on the merits of Judith's appeal, we affirm Judith's conviction but remand the case to the trial court for the issuance of a nunc pro tunc entry to correct the error.

{¶ 74} Judgment affirmed and case remanded for issuance of a nunc pro tunc entry in accordance with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing Cleveland Municipal Court to carry this judgment into execution. Case remanded to the trial court for execution of sentence and the issuance of a nunc pro tunc entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR