[Cite as *Asriian v. Pribish*, 2026-Ohio-1650.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALEXSII ASRIIAN,                          :

    Plaintiff-Appellant,          :

                       No. 115483

    v.                                     :

VINCENT T. PRIBISH,                      :

    Defendant-Appellee.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 7, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-997747

---

### *Appearances:*

JENESQ, James E. Nobile, and Eric E. Willison, *for appellant*.

Gallagher, Gams, Tallan, Barnes & Littrell L.L.P., and Mitchell M. Tallan,*for appellee*.

---

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant Alexii Asriian ("Asriian") appeals from a judgment awarding him $ 279.70 for the diminished value of his car following a motor vehicle accident. He claims the following errors:

1. The trial court abused its discretion by failing to rule on the pretrial *Daubert* motion or hold a hearing before allowing the defendant's proposed expert to testify, thereby abdicating its gatekeeping role.

2. The trial court abused its discretion causing material prejudice to appellant by allowing the jury to hear and consider unqualified, non-expert testimony from a non-owner of personal property on the issue of valuation.

We find that the expert witness of defendant-appellee Vincent Pribish ("Pribish") was qualified to testify as an expert and that the trial court properly allowed him to testify. We, therefore, affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} Asriian is the title owner of a 2021 Volkswagen Jetta GLI Automahn ("Jetta"). On March 16, 2023, while he was driving on Interstate 71 in Cleveland, Ohio, his Jetta was struck by a wheel that detached from a 2008 Chevrolet 2500 van owned by Pribish. Fortunately, Asriian was not injured, but the front, left side of his Jetta sustained damage.

{¶ 3} Asriian took his Jetta to IGear Carstar ("Carstar") in Cleveland for repairs. The cost of repairs totaled $6,545.30, and Asriian received reimbursement for the cost of repairs from Pribish's insurance carrier.

{¶ 4} In May 2024, Asriian filed a complaint against Pribish, seeking to recover the residual diminution in value ("RDV") of his Jetta. He alleged that although he had been compensated for the cost of repairs, he was not fully compensated for his loss because the cost of repairs did not include the RDV of his car that now had an accident in its history. In his prayer for relief, Asriian requested $8,416.00, plus interest and costs.

{¶ 5} The case proceeded to a jury trial. Asriian presented Daniel Hudson, from Houston, Texas ("Hudson"), as an expert witness on the issue of RDV. Hudson testified that he co-founded the American Society of Certified Auto Appraisers, an organization that creates standards and guidelines for appraising motor vehicles. He conceded that there was no structural damage to Asriian's Jetta. However, he did not consider the damage to be purely cosmetic because the hood had to be replaced and the door required filler material. (Tr. 56.)

{¶ 6} Hudson explained that in calculating the RDV of the Jetta, he used J.D. Power's used-car guide to determine the before-accident value of the car. Based on J.D. Power's data, he concluded that the car was valued at $28,000 immediately before the accident. (Tr. 47 and 51-52.) He then concluded that the car was worth between $14,000 and $15,000 in its "wrecked" condition and that it was worth $20,000 in its repaired condition. (Tr. 54 and 71.)

{¶ 7} Hudson explained that he determined the post-repair value by calling the used-car departments of several dealerships and asking them what the car would sell for on the open market, knowing that the car had been involved in an accident. (Tr. 72.) Hudson used the pre-accident value, the post-accident-pre-repair value, and the post-repair value to conclude that the RDV was $7,687, as a direct result of the accident. (Tr. 73 and 91.)

{¶ 8} Hudson admitted on cross-examination that there is no science to assessing these fair market values and that he relied on outside sources such as J.D. Power and used-car dealerships to determine the values. (Tr. 91.) Hudson also

admitted that he never inspected Asriian's Jetta and that he relied instead on the repair estimates and photographs provided to him to appraise the RDV. (Tr. 88.)

{¶ 9} Pribish presented Andrew Tilton ("Tilton") as his defense expert on the issue of RDV. Prior to trial, Asriian filed a motion to exclude Tilton's expert testimony, arguing that Tilton's testimony failed to meet the requirements of Evid.R. 702(C) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The trial court did not rule on the motion prior to trial, and Asriian did not object when Pribish called him to testify for the defense.

{¶ 10} Tilton testified that, at the time of trial, he had been in the business of performing mechanical and body-work repairs for 45 years. He has a shop in Cleveland and another shop in Columbus, Ohio. The Cleveland shop has 21 bays, and the Columbus shop has six bays. Tilton explained that his business repairs approximately 500 cars per month and that he is personally involved in the repairs. As part of his business, Tilton also buys damaged vehicles, repairs them, and resells them in their repaired condition. (Tr. 108 and 111-112.) Tilton explained that he assesses the fair market value of every damaged vehicle brought to his shop for repairs because it would not be appropriate to charge more for repairs than the actual fair market value of the vehicle. (Tr. 126-128.)

{¶ 11} Defense counsel asked Tilton what it means to be a certified auto appraiser. (Tr. 128.) Tilton replied that he could buy a placard for his wall for $750 and 40 hours of his time to become certified auto appraiser, but he did not think it

was necessary since he has been working on cars for 45 years and he has owned his own auto repair business for 36 years. (Tr. 108 and 128-129.)

{¶ 12} Tilton offered his opinion regarding the RDV of Asriian's Jetta. He estimated the fair market value of Asriian's Jetta prior to the accident was $27,850, virtually the same as Hudson's pre-accident value of $28,000. However, Tilton determined that the Jetta had a fair market value of $24,500 in its damaged condition before being repaired. (Tr. 122.)

{¶ 13} When asked how he arrived at this figure, Tilton explained that Asriian's Jetta is not a "boilerplate little Jetta coming off the line," rather "it's a fun little turbocharged" model that is "very sellable." (Tr. 122.) According to Tilton, these extra features bring "value to it even in its damaged condition." (Tr. 122.) He explained that there was no structural damage to the car, that the damage was merely "cosmetic, superficial," and that many people could repair the damages themselves. (Tr. 122.) Finally, he stated that the body shop that performed the repairs to Asriian's car charged for some things that were not necessary. (Tr. 124.)

{¶ 14} According to Tilton, Asriian's Jetta was worth $24,500 in its damaged condition. He then received $6,545 to repair it. When $24,500 is added to $6,545, the value Asriian received was more than the car was worth before the accident. Therefore, under Tilton's valuation, Asriian did not suffer any RDV and, in closing argument, defense counsel asked the jury to render a defense verdict.

{¶ 15} At the conclusion of the trial, the jury awarded Asriian a total of $279.70 on his claim for RDV. The trial court also denied Asriian's motion to

exclude Tilton from testifying as an expert at the end of the trial. Asriian now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 16} In the first assignment of error, Asriian argues the trial court erred by failing to rule on his pretrial *Daubert* motion or to hold a *Daubert* hearing before allowing Tilton to testify as a car-appraisal expert at trial. In the second assignment of error, Asriian argues the trial court abused its discretion and caused material prejudice to his case by allowing Pribish's defense expert to offer opinion's regarding the RDV of his car when Pribish's proposed expert was not qualified to offer expert opinions on the RDV. In both assignments of error, Asriian argues the trial court failed to independently evaluate the reliability of Tilton's opinions and that, had it done so, it would have excluded Tilton's testimony. We, therefore, discuss both assigned errors together.

## A. Standard of Review

{¶ 17} A trial court has broad discretion in determining the admissibility of expert testimony. *State v. Froman*, 2020-Ohio-4523, ¶ 87. We, therefore, will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *In re J.G.*, 2025-Ohio-1933, ¶ 16 (9th Dist.).

{¶ 18} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. This court has also held that an abuse of discretion may be found where a trial court "applies the wrong legal standard,

misapplies the correct legal standard, or relies on clearly erroneous findings of fact."

*Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

## B. Expert Testimony

{¶ 19} Evid.R. 702 governs expert testimony and states, in relevant part:

A witness may testify as an expert if the proponent demonstrates to the court that it is more likely than not that all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

{¶ 20} Asriian argues Tilton was not qualified to testify as an expert and that his testimony failed to meet the standards for reliability outlined by the United States Supreme Court in *Daubert,* 509 U.S. 579. The *Daubert* Court recognized that a trial court has an important "gatekeeping function" to ensure that evidence is both relevant and reliable. *Id.* at 589. To that end, the Court enumerated several nonexhaustive factors courts must consider when determining whether scientific evidence is reliable. *Id.* at 593-594. These factors include (1) whether a particular theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. *Id.* at 593-594. The *Daubert* Court

explained that "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Id.* The Ohio Supreme Court adopted the *Daubert* standard in *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607 (1998).

{¶ 21} A few years after *Daubert*, the United States Supreme Court decided *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Kumho Tire*, the Court explained that the reliability test outlined in *Daubert* is "flexible." *Id.* at 141 and 150. It also held that the specific factors enumerated in *Daubert* do not all apply in every case. *Id.* at 147-150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150. Indeed, this court has held that "the *Daubert* factors do not apply in every case, particularly where the expert testimony stems from the expert's personal knowledge or experience." *Cleveland v. Newell,* 2024-Ohio-2064, ¶ 41 (8th Dist.). *See also Berry v. Detroit*, 25 F.3d 1342, 1349 (6th Cir. 1994)(recognizing that "the distinction between scientific and non-scientific expert testimony is a critical one[,]" and that *Daubert* is "only of limited help" in assessing expertise grounded in personal experience); *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997)(observing that the *Daubert* factors are not always useful in cases involving expertise derived from practical experience); *First Tennessee Bank Natl. Assn. v. Barreto*, 268 F.3d 319, 334-335 (6th Cir. 2001) (noting that expert opinions based on practical experience "do not easily lend themselves to scholarly review or to traditional scientific evaluation").

{¶ 22} The Ohio Supreme Court has held that "[p]rofessional experience and training in a particular field may be sufficient to qualify one as an expert." *State v.*

*Mack*, 73 Ohio St.3d 502, 511 (1995), citing *State v. Beuke*, 38 Ohio St.3d 29, 43 (1988).

> Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function.

*State v. Hartman*, 93 Ohio St.3d 274, 285 (2001), citing *State v. Baston*, 85 Ohio St.3d 418, 423 (1999). *See also State v. Davis*, 2008-Ohio-2, ¶ 148 ("Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function.").

{¶ 23} Furthermore, Ohio courts have held that a *Daubert* hearing is not required to determine the admissibility of an expert's testimony in every case. For example, in *State v. Kegg*, 2025-Ohio-2651 (4th Dist.), the Fourth District held that the trial court in that case properly allowed a social worker to provide expert testimony regarding the behavior of sexual-assault victims without holding a *Daubert* hearing because the social worker had specialized knowledge derived from extensive experience working with sexual-assault victims. *Id*. at ¶ 26 and 37-39.

{¶ 24} In *Sliwinski v. St. Edwards*, 2014-Ohio-4655 (9th Dist.), the court held that the trial court was not required to hold a *Daubert* hearing to qualify a nurse and two doctors as nursing-home experts because the experts had specialized knowledge, skill, and experience working in nursing-home facilities. *Id*. at ¶ 6 and

12-15. In rejecting the argument that a *Daubert* hearing was required, the court explained:

> "The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable."

*Id*. at ¶ 15, quoting *Kumho Tire Co*., 526 U.S. at 152.

{¶ 25} In *Cleveland v. Newell*, 2024-Ohio-2064 (8th Dist.), this court held that a veterinarian with 20 years of experience was qualified to testify as an expert even though her opinions had not been subjected to the *Daubert* test because her expert testimony was based on extensive personal knowledge and experience. *Id*. at ¶ 41-42. The veterinarian's testimony was not "based on novel scientific theories or methods that needed to be scrutinized by the trial court under *Daubert*." *Id*. at ¶ 42. This court further held that "'[s]cientific studies are not the exclusive means to establish reliability under *Daubert*. Rather, the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id*., quoting *Kumho Tire Co., Ltd*., 526 U.S. at 150-151.

{¶ 26} It is undisputed that Tilton's testimony relates to matters beyond the knowledge or experience possessed by lay persons, pursuant to Evid.R. 702(A), and is, therefore, expert testimony. It is also undisputed that assessing the fair market value of a motor vehicle is not based on novel scientific theories or methodologies. Hudson, Asriian's own expert, conceded that appraising the fair market value of

motor vehicles is not a scientific process. (Tr. 91.) He also stated that the appraisal of motor vehicles "is not science." (Tr. 92.)

{¶ 27} Like the experts in *Kegg*, *Sliwinski*, and *Newell*, Tilton's opinions were based on specialized knowledge derived from extensive experience buying, repairing, and selling damaged vehicles. As previously stated, Tilton had been in the car-repair business for 45 years at the time of trial. He testified that his business repairs approximately 500 cars per month and that he is personally involved in the repairs. As part of his business, Tilton also buys damaged vehicles and repairs them for resale. He stated that every time he provides an estimate for repairs to a damaged vehicle, he must appraise the fair market value of the vehicle in both its pre-accident condition and its post-accident condition in order to avoid charging more for repairs than the vehicle is worth. (Tr. 126-128.)

{¶ 28} Tilton's experience valuing damaged cars for repair and resale qualified him as an expert appraiser of damaged vehicles. He was, therefore, qualified to offer an expert opinion regarding the RDV of Asriian's car following the accident giving rise to this case. It does not matter that Tilton did not have any official certification as an automobile appraiser since neither special education nor certification is necessary to confer expert status upon a witness. *Hartman*, 93 Ohio St.3d at 285. Tilton's specialized knowledge based on years of experience was enough to establish the reliability of Tilton's testimony.

{¶ 29} Furthermore, a motion to exclude testimony, also known as a motion in limine, "has an interlocutory or tentative nature, which requires the party

opposing the motion to affirmatively raise the issue at the appropriate time during the trial; otherwise, any error caused by the exclusion of the evidence is forfeited." *Jones v. Cleveland Clinic Found.*, 2021-Ohio-1095, ¶ 26 (8th Dist.). As previously stated, Asriian did not preserve the issue of Tilton's expert testimony because he failed to object to his testimony when Tilton took the stand. (Tr. 107-108.)

{¶ 30} Nevertheless, the trial court did not abdicate its gatekeeping function; it properly allowed Tilton to testify as an expert appraiser of used and damaged vehicles. Therefore, the first and second assignments of error are overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
TIMOTHY W. CLARY, J., CONCUR